**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | Criminal Number: |
| | : | |
| v. | : | VIOLATION: |
| | : | |
| | : | Count One: |
| JAMES STEVEN GRILES, | : | 18 U.S.C. § 1505 |
| | : | (Obstruction of Proceedings |
| Defendant. | : | Before the United States Senate) |

**I N F O R M A T I O N**

The United States of America charges that, at all times relevant hereto:

**Count One**

Background

1.      From on or about July 17, 2001, through on or about January 31, 2005, the

defendant, JAMES STEVEN GRILES, served as the Deputy Secretary of the United States

Department of the Interior ("DOI"), the second-highest ranking official within DOI.  DOI was

the Federal agency responsible for, among other things, such Native American matters as tribal

recognition, gaming compacts and applications to place land into trust for gaming purposes,

and distributing Federal program funds.

2.      From in or about January 2001, through in or about March 2004, Jack A.

Abramoff was a Washington, D.C. lobbyist, employed by "Firm A."  Abramoff represented

Native American tribal governments and other entities subject to DOI oversight.  Abramoff and

his clients had a substantial and recurring interest in decisions made by DOI and its officials.

3.      "Person A" was the founder and operator of "Organization A," a purported

tax-exempt organization created in or about 1997.  Since its inception, Organization A operated

through contributions from donors, including Abramoff and his clients.

4.    In or about June 1998, Person A set up Organization A in Washington, D.C. Thereafter, the defendant, JAMES STEVEN GRILES, took an active interest in Organization A and began assisting Person A in raising funds to support Organization A until he was confirmed as DOI Deputy Secretary. From in or about 1998, and continuing through in or about 2003, defendant GRILES had a personal and, at times, romantic relationship with Person A. The defendant and Person A remained close friends for some time after their romantic relationship ended.

5.    On or about March 1, 2001, a week prior to his nomination to serve as DOI Deputy Secretary, the defendant, JAMES STEVEN GRILES, was introduced to Abramoff by Person A. During this meeting, the three discussed defendant GRILES' impending nomination, Abramoff's interests in DOI issues and recommending colleagues for DOI positions, and Organization A. Thereafter, at some point during his tenure as DOI Deputy Secretary, the defendant became aware of the fact that Abramoff was a substantial contributor to Organization A. The defendant has since learned that between March 2001 and May 2003, Abramoff personally and through his clients donated a total of $500,000 to Organization A.

6.    As a result of defendant JAMES STEVEN GRILES' personal and romantic relationship with Person A, Person A's introduction of Abramoff to defendant GRILES gave Abramoff more credibility as a lobbyist than Abramoff ordinarily would have had with the defendant and facilitated the building of a professional relationship between Abramoff and the defendant that ordinarily would have taken years to develop. Consequently, during the defendant's tenure as DOI Deputy Secretary, Abramoff had a unique relationship with the defendant that distinguished him from other lobbyists and allowed him access to the defendant directly and through Person A indirectly.

7.    From in about March 2001, through in or about February 2004, Abramoff

occasionally sought and received – both directly and through Person A – defendant JAMES

STEVEN GRILES' advice and intervention on issues within the jurisdiction of DOI that directly

affected Abramoff and his clients.

<u>The United States Senate Committee on Indian Affairs Investigation</u>

8.    In or about the Fall of 2004, the United States Senate Committee on Indian

Affairs ("Senate Committee") began an official investigation into allegations of misconduct by

Abramoff and others made by several Native American tribes.  As part of the Senate

Committee's investigation, the defendant, JAMES STEVEN GRILES, submitted to a voluntary

investigative interview conducted by Senate investigators on or about October 20, 2005.

Defendant GRILES then testified before members of the Senate Committee during a public

hearing conducted on or about November 2, 2005.

9.    During both the October 20, 2005 investigative interview and the November 2,

2005 public hearing, the Senate Committee focused on the following areas of inquiry, among

others, concerning defendant JAMES STEVEN GRILES' tenure as DOI Deputy Secretary: the

level of access Abramoff had to defendant GRILES; the nature and extent of the defendant's

relationship and dealings with Abramoff and Person A; whether the defendant, Abramoff, and

Person A communicated about issues pending before DOI that directly affected Abramoff's

clients; and whether the defendant, in fact, had advised Abramoff and intervened on issues

pending before DOI that directly affected Abramoff's clients.  Defendant GRILES was aware of

the scope of the Senate Committee's inquiry before his October 20, 2005 interview began.

10.    During both the October 20, 2005 investigative interview and the November 2,

2005 public hearing, the defendant, JAMES STEVEN GRILES, was questioned about, among

other things: the true nature and extent of defendant GRILES' relationship with Person A, the person who introduced Abramoff to the defendant; how and why the defendant's relationship with Abramoff thereafter developed; and the nature and extent of Abramoff's access to the defendant. It was material to the Senate Committee's investigation that the Senators and Senate investigators who questioned defendant GRILES learned the truth about these issues.

<u>Defendant's Obstruction of Proceedings Before the United States Senate</u>

11.    From on or about October 20, 2005, to on or about November 2, 2005, in the District of Columbia, the defendant, JAMES STEVEN GRILES, did knowingly and corruptly influence, obstruct, and impede, and endeavor to influence, obstruct, and impede the due and proper exercise of the power of inquiry under which an investigation and review was being had by the United States Senate and a Committee of the United States Senate. That is, during his October 20, 2005 interview with investigators working for the United States Senate Committee on Indian Affairs, and during his November 2, 2005 testimony at a public hearing held before members of the United States Senate Committee on Indian Affairs, the defendant, JAMES STEVEN GRILES, knowingly and intentionally made a series of materially false and fictitious declarations to, and withheld material information from, Senators and Senate investigators in response to questions about the true nature and extent of defendant GRILES' relationship with Person A, the person who introduced Abramoff to the defendant; how and why the defendant's relationship with Abramoff thereafter developed; and the nature of Abramoff's access to the defendant.

All in violation of Title 18, United States Code, Section 1505.

- 4 -

FOR THE UNITED STATES

WILLIAM M. WELCH, II
Chief
Public Integrity Section
Criminal Division
United States Department of Justice

By: _____
ARMANDO O. BONILLA
Trial Attorney


By: _____
KARTIK K. RAMAN
Trial Attorney

March 21, 2007

- 5 -