## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

UNITED STATES OF AMERICA    :
    :
    v.           :
    :    Crim. No. 07-079
    :
JAMES STEVEN GRILES,    :
    :
    Defendant.    :

### UNITED STATES' NOTICE OF SUPPLEMENTAL AUTHORITY

The United States of America, by and through the undersigned counsel within the

United States Department of Justice, Criminal Division, Public Integrity Section, respectfully

submits this notice of supplemental authority in further support of the Government's sentencing

recommendation in this case:

> Rita v. United States, __ U.S. __, __ S. Ct. __, No. 06-5754, 2007 WL 1772146
> (U.S. June 21, 2007).

In Rita, the United States Supreme Court adopted a "presumption of reasonableness" in cases

where a sentence imposed by a district court falls within the properly calculated Sentencing

Guideline range. Id. at *6-12.  The Court then upheld a sentence of 33 months of incarceration

for "[t]he basic crime . . . of two false statements . . . made under oath to a federal grand jury."

Id. at *3, 12-14; see also id. at *4, 13 (affirming sentencing court's decision that defendant's

25 years of distinguished military service did not warrant a sentencing variance under 18 U.S.C.

§ 3553(a)).[1]  For the Court's convenience, a copy of the Supreme Court's decision in Rita is

attached to this filing.

---

[1] The Supreme Court's impending decision in Rita was noted in defendant James Steven
Griles' June 8, 2006 sentencing memorandum.  See Def.'s Br. at 6 n.4.

Respectfully Submitted,

WILLIAM M. WELCH, II
Chief
Public Integrity Section

By: _____
ARMANDO O. BONILLA
KARTIK K. RAMAN
Trial Attorneys
Public Integrity Section
Criminal Division
U.S. Department of Justice
1400 New York Avenue, NW – 12th Floor
Washington, DC  20005
T: 202-616-2983 / 202-616-5535
F: 202-514-3003
e-mail: armando.bonilla@usdoj.gov
e-mail: kartik.k.raman@usdoj.gov

June 22, 2007

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that on this 22nd day of June, 2007, I caused to be electronically filed with the Clerk of the Court using the CM/ECF system a complete copy of this filing and accompanying documents, entitled "United States' Notice of Supplemental Authority," which will automatically send e-mail notification of this filing to the identified attorneys of record for the defendant, James Steven Griles

> Barry M. Hartman, Esq.
> Brian W. Stolarz, Esq.
> Kirkpatrick & Lockhart Preston
>      Gates Ellis LLP
> 1601 K Street, N.W.
> Washington, DC  20006
> *Counsel for defendant James Steven Griles*

Armando O. Bonilla
Trial Attorney
Public Integrity Section

Westlaw.

--- S.Ct. ----

--- S.Ct. ----, 2007 WL 1772146 (U.S.)
**(Cite as: --- S.Ct. ----)**

**H**
**Rita** v. U.S.
U.S.,2007.
Only the Westlaw citation is currently available.
Supreme Court of the United States
Victor A. **RITA**, Petitioner,
v.
UNITED STATES.
No. 06-5754.

Argued Feb. 20, 2007.
Decided June 21, 2007.

**Background:** Defendant was convicted in the United States District Court for the Western District of North Carolina, William L. Osteen, J., of perjury, obstruction of justice and making false statements. The United States Court of Appeals for the Fourth Circuit affirmed, 177 Fed.Appx. 357. Certiorari was granted.

**Holdings:** The United States Supreme Court, Justice Breyer, held that:

(1) federal appellate court may apply presumption of reasonableness to district court sentence that is within properly calculated Sentencing Guidelines range;

(2) application of presumption of reasonableness comports with Sixth Amendment even if it increases likelihood that sentencing judge rather than jury will find sentencing facts;

(3) District Court judge's statement of reasons at sentencing was sufficient, even though brief; and

(4) defendant's special circumstances did not render within-Guidelines sentence unreasonable as a matter of law.

Affirmed.

Justice Stevens filed concurring opinion joined in part by Justice Ginsburg.

Justice Scalia filed opinion concurring in part and concurring in the judgment, joined by Justice Thomas.

Justice Souter filed dissenting opinion.

**[1] Criminal Law 110 ⚖➝1144.17**

110 Criminal Law
    110XXIV Review
        110XXIV(M) Presumptions
            110k1144 Facts or Proceedings Not Shown by Record
                110k1144.17 k. Judgment, Sentence, and Punishment. Most Cited Cases

**Sentencing and Punishment 350H ⚖➝651**

350H Sentencing and Punishment
    350HIV Sentencing Guidelines
        350HIV(A) In General
            350Hk651 k. Operation and Effect of Guidelines in General. Most Cited Cases
Federal appellate court may apply presumption of reasonableness to district court sentence that is within properly calculated Sentencing Guidelines range; presumption, which is not binding and has no independent legal effect, arises from assumption, warranted by accord between Sentencing Commission and sentencing court, that Guidelines reflect rough approximation of sentences that might achieve objectives of sentencing statute. 18 U.S.C.A. § 3553(a); U.S.S.G. § 1B1.1 et seq., 18

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----

Page 2

--- S.Ct. ----, 2007 WL 1772146 (U.S.)
**(Cite as: --- S.Ct. ----)**

U.S.C.A.

Federal appellate court may apply presumption of reasonableness to district court sentence that is within properly calculated Sentencing Guidelines range; presumption, which is not binding and has no independent legal effect, arises from assumption, warranted by accord between Sentencing Commission and sentencing court, that Guidelines reflect rough approximation of sentences that might achieve objectives of sentencing statute. 18 U.S.C.A. § 3553(a); U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

**[2] Criminal Law 110 ⊜⇒1144.17**

110 Criminal Law
    110XXIV Review
        110XXIV(M) Presumptions
            110k1144 Facts or Proceedings Not Shown by Record
                110k1144.17 k. Judgment, Sentence, and Punishment. Most Cited Cases

**Jury 230 ⊜⇒34(6)**

230 Jury
    230II Right to Trial by Jury
        230k30 Denial or Infringement of Right
            230k34 Restriction or Invasion of Functions of Jury
                230k34(5) Sentencing Matters
                    230k34(6) k. In General. Most Cited Cases

**Sentencing and Punishment 350H ⊜⇒651**

350H Sentencing and Punishment
    350HIV Sentencing Guidelines
        350HIV(A) In General
            350Hk651 k. Operation and Effect of Guidelines in General. Most Cited Cases
Federal appellate court's application of presumption of reasonableness to district court sentence that is within properly calculated Sentencing Guidelines range comports with Sixth Amendment even if it increases likelihood that sentencing judge rather than jury will find sentencing facts; Sixth Amendment does not automatically forbid

sentencing court to increase sentence based on facts not determined by jury, nor does it prohibit sentencing judge from taking account of Sentencing Commission's factual findings or recommended sentences. U.S.C.A. Const.Amend. 6; U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

Federal appellate court's application of presumption of reasonableness to district court sentence that is within properly calculated Sentencing Guidelines range comports with Sixth Amendment even if it increases likelihood that sentencing judge rather than jury will find sentencing facts; Sixth Amendment does not automatically forbid sentencing court to increase sentence based on facts not determined by jury, nor does it prohibit sentencing judge from taking account of Sentencing Commission's factual findings or recommended sentences. U.S.C.A. Const.Amend. 6; U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

Federal appellate court's application of presumption of reasonableness to district court sentence that is within properly calculated Sentencing Guidelines range comports with Sixth Amendment even if it increases likelihood that sentencing judge rather than jury will find sentencing facts; Sixth Amendment does not automatically forbid sentencing court to increase sentence based on facts not determined by jury, nor does it prohibit sentencing judge from taking account of Sentencing Commission's factual findings or recommended sentences. U.S.C.A. Const.Amend. 6; U.S.S.G. § 1B1.1 et seq., 18 U.S.C.A.

**[3] Criminal Law 110 ⊜⇒1144.17**

110 Criminal Law
    110XXIV Review
        110XXIV(M) Presumptions
            110k1144 Facts or Proceedings Not Shown by Record
                110k1144.17 k. Judgment, Sentence, and Punishment. Most Cited Cases
Federal appellate courts may not presume that every variance from advisory Sentencing Guidelines is unreasonable.

**[4] Jury 230 ⊜⇒34(6)**

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----

--- S.Ct. ----, 2007 WL 1772146 (U.S.)
**(Cite as: --- S.Ct. ----)**

230 Jury
   230II Right to Trial by Jury
      230k30 Denial or Infringement of Right
         230k34 Restriction or Invasion of
Functions of Jury
         230k34(5) Sentencing Matters
            230k34(6) k. In General. Most
Cited Cases
Ordinary explanation by federal district court judge
of reasons as to why judge has, or has not, applied
Sentencing Guidelines triggers no Sixth
Amendment jury trial requirement. U.S.C.A.
Const.Amend. 6.

**[5] Sentencing and Punishment 350H ⊙⟳996**

350H Sentencing and Punishment
   350HIV Sentencing Guidelines
      350HIV(H) Proceedings
         350HIV(H)3 Hearing
            350Hk992 Findings and Statement of
Reasons
            350Hk996 k. Sufficiency. Most
Cited Cases
Federal district court judge's statement of reasons
for imposing within-Guidelines sentence in
perjury/obstruction of justice prosecution was
legally sufficient, even though it was brief and did
not explicitly state that judge had considered and
rejected defendant's arguments for departure or
non-Guidelines sentence, and why; judge's
comments made clear that he had listened to each
argument, was aware of defendant's arguments
based on physical ailments, fear of prison retaliation
and military service, and had found those
circumstances insufficient to warrant
outside-Guidelines sentence. 18 U.S.C. §§ 1623(a),
1001(a)(2), 1503, 3553(a, c); U.S.S.G. §§
2J1.3(c)(1), 2X3.1, 5K2.0(a)(2), 18 U.S.C.A.

**[6] Sentencing and Punishment 350H ⊙⟳109**

350H Sentencing and Punishment
   350HI Punishment in General
      350HI(E) Factors Related to Offender
         350Hk109 k. Physical Illness or
Disability. Most Cited Cases

**Sentencing and Punishment 350H ⊙⟳117**

350H Sentencing and Punishment
   350HI Punishment in General
      350HI(E) Factors Related to Offender
         350Hk117 k. Other Offender-Related
Considerations. Most Cited Cases
Defendant's special circumstances in
perjury/obstruction of justice prosecution, namely
ill health, fear of retaliation in prison due to history
as law enforcement officer, and long military
record, did not render within-Guidelines sentence
unreasonable as a matter of law; sentence took
health into account by seeking assurance that
bureau of Prisons (BOP) would provide treatment,
record did not establish basis for unusual fear or
retaliation, and there was no claim that military
service ordinarily should lead to more lenient
sentence. 18 U.S.C. §§ 1623(a), 1001(a)(2), 1503,
3553(a); U.S.S.G. §§ 2J1.3(c)(1), 2X3.1,
5K2.0(a)(2), 18 U.S.C.A.

*Syllabus* [FN*]

        FN* The syllabus constitutes no part of the
        opinion of the Court but has been prepared
        by the Reporter of Decisions for the
        convenience of the reader. See *United*
        *States v. Detroit Timber & Lumber Co.,*
        200 U.S. 321, 337, 26 S.Ct. 282, 50 L.Ed.
        499.

**\*1** Petitioner Rita sought a sentence lower than the
recommended Federal Guidelines range of 33 to 41
months based on his physical condition, likely
vulnerability in prison, and military experience. The
judge concluded that the appropriate sentence was
33 months, the bottom of the Guidelines range. In
affirming, the Fourth Circuit observed that a
sentence imposed within a properly calculated
Guidelines range is presumptively reasonable.

*Held:*

1. A court of appeals may apply a presumption of
reasonableness to a district court sentence within
the Guidelines. Pp. --- - ----7-16.

(a) Such a presumption is not binding. It does not
reflect strong judicial deference of the kind that
leads appeals court to grant greater factfinding
leeway to an expert agency than to a district judge.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----

--- S.Ct. ----, 2007 WL 1772146 (U.S.)
**(Cite as: --- S.Ct. ----)**

It reflects the nature of the Guidelines-writing task that Congress set for the Sentencing Commission and how the Commission carries out that task. In 18 U.S.C. § 3553(a), Congress instructed the *sentencing judge* to consider (1) offense and offender characteristics; (2) the need for a sentence to reflect the basic aims of sentencing, (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities; and (7) the need for restitution. Statutes then tell the *Commission* to write Guidelines that will carry out the same basic § 3553(a) objectives. The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and had the help of the law enforcement community over a long period in an effort to fulfill this statutory mandate. They also reflect the fact that judges (and others) can differ as to how best to reconcile the disparate ends of punishment. The resulting Guidelines seek to embody the § 3553(a) considerations, both in principle and in practice, and it is fair to assume that they, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives. An individual sentence reflects the sentencing judge's determination that the Commission's application of § 3553(a) is appropriate in the mine run of cases, that the individual case does not differ significantly, and consequently that a Guidelines sentence reflects a proper application of § 3553(a) in the case at hand. The "reasonableness" presumption simply recognizes these real-world circumstances. It applies only on appellate review. The sentencing court does not enjoy the presumption's benefit when determining the merits of the arguments by prosecution or defense that a Guidelines sentence should not apply. Pp. --- - ----7-12.

(b) Even if the presumption increases the likelihood that the judge, not the jury, will find "sentencing facts," it does not violate the Sixth Amendment. This Court's Sixth Amendment cases do not forbid a sentencing court to take account of factual matters not determined by a jury and increase the sentence accordingly to take account of the Sentencing Commission's factual findings or recommended sentences. The relevant Sixth Amendment inquiry is

whether a law forbids a judge to increase a sentence *unless* the judge finds facts that the jury did not find. A nonbinding appellate reasonableness presumption for Guidelines sentences does not *require* the sentencing judge to impose a Guidelines sentence. Still less does it *forbid* the judge to impose a sentence higher than the Guidelines provide for the jury-determined facts standing alone. In addition, any general conflict between § 3353(a) and the Guidelines for appellate review purposes is alleviated where judge and Commission both determine that the Guidelines sentence is appropriate in the case at hand, for that sentence likely reflects § 3353(a)'s factors. Pp. --- - ----12-16.

2. The District Court properly analyzed the relevant sentencing factors, and given the record, its ultimate sentence was reasonable. Section 3353(c) calls for the judge to "state" his "reasons," but does not insist on a full opinion in every case. The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances. The law leaves much, in this respect, to the judge's own professional judgment. In the present context, the sentencing judge should articulate enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority. He may say less when his decision rests upon the Commission's own reasoning that the Guidelines sentence is proper in the typical case, and the judge has found that the case before him is typical. But where a party presents nonfrivolous reasons for imposing a different sentence, the judge will normally go further and explain why he has rejected those arguments. Here, the sentencing judge's statement of reasons was brief but legally sufficient. The record makes clear that the judge listened to each of Rita's arguments for a downward departure and considered the supporting evidence before finding those circumstances insufficient to warrant a sentence lower than the Guidelines range. Where, as here, the matter is conceptually simple and the record makes clear that the sentencing judge considered the evidence and arguments, the law does not require a judge to write more extensively. Pp. --- - ----16-20.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----, 2007 WL 1772146 (U.S.)
**(Cite as: --- S.Ct. ----)**

**\*2** 3. The Fourth Circuit, after applying the presumption, was legally correct in holding that Rita's sentence was not "unreasonable." Like the District Court and the Fourth Circuit, this Court simply cannot say that Rita's special circumstances-his health, fear of retaliation, and military record-are special enough, in light of § 3553(a), to require a sentence lower than the one the Guidelines provide. Rita's argument that the Guidelines sentence is not reasonable under § 3553(a) because it expressly declines to consider various personal characteristics, such as his physical condition, employment record, and military service, was not raised below and will not be considered here. Pp. --- - ----20-21.

177 Fed. Appx. 357, affirmed.

BREYER, J., delivered the opinion of the Court, in which ROBERTS, C. J., and STEVENS, KENNEDY, GINSBURG, and ALITO, JJ., joined, and in which SCALIA and THOMAS, JJ., joined as to Part III. STEVENS, J., filed a concurring opinion, in which GINSBURG, J., joined as to all but Part II. SCALIA, J., filed an opinion concurring in part and concurring in the judgment, in which THOMAS, J., joined. SOUTER, J., filed a dissenting opinion.

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE FOURTH CIRCUIT

Thomas N. Cochran, for Petitioner.
Michael R. Dreeben, for Respondent.
Jeffrey T. Green, Robert N. Hochman, Ruthanne M. Deutsch, Quin M. Sorenson, Eric A. Shumsky, Brian E. Nelson, Sidley Austin LLP, Washington, D.C., Thomas N. Cochran, Assistant Federal Public Defender, Louis C. Allen III, Federal Public Defender, William C. Ingram, First Assistant Federal Public Defender, Elizabeth A. Flagg, Research & Writing Attorney, Greensboro, NC, for Petitioner.
Paul D. Clement, Alice S. Fisher, Assistant Attorney General, Michael R. Dreeben, Deputy Solicitor General, Dan Himmelfarb, Matthew D. Roberts, Assistants to the Solicitor General, Nina

Goodman, Jeffrey P. Singdahlsen, Washington, D.C., for Respondent.For U.S. Supreme Court briefs, see:2006 WL 3740371 (Pet.Brief)2007 WL 186288 (Resp.Brief)2007 WL 445341 (Reply.Brief)
Justice BREYER delivered the opinion of the Court.
**\*3** The federal courts of appeals review federal sentences and set aside those they find " unreasonable." See, *e.g., United States v. Booker,* 543 U.S. 220, 261-263, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005). Several Circuits have held that, when doing so, they will presume that a sentence imposed within a properly calculated United States Sentencing Guidelines range is a reasonable sentence. See, *e.g.,* 177 Fed.Appx. 357, 358 (C.A.4 2006) *(per curiam)* (case below); see also United States Sentencing Commission, Guidelines Manual (Nov.2006) (USSG or Guidelines). The most important question before us is whether the law permits the courts of appeals to use this presumption. We hold that it does.

I

A

The basic crime in this case concerns two false statements which Victor Rita, the petitioner, made under oath to a federal grand jury. The jury was investigating a gun company called InterOrdnance. Prosecutors believed that buyers of an InterOrdnance kit, called a "PPSH 41 machinegun ' parts kit, " could assemble a machinegun from the kit, that those kits consequently amounted to machineguns, and that InterOrdnance had not secured proper registrations for the importation of the guns. App. 7, 16-19, 21-22.

Rita had bought a PPSH 41 machinegun parts kit. Rita, when contacted by the Bureau of Alcohol, Tobacco, and Firearms and Explosives (ATF), agreed to let a federal agent inspect the kit. *Id.,* at 119-120; Supp.App. 5-8. But before meeting with the agent, Rita called InterOrdnance and then sent back the kit. He subsequently turned over to ATF a different kit that apparently did not amount to a machinegun. App. 23-24, 120; Supp.App. 2-5, 8-10, 13-14.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----, 2007 WL 1772146 (U.S.)
**(Cite as: --- S.Ct. ----)**

The investigating prosecutor brought Rita before the grand jury, placed him under oath, and asked him about these matters. Rita denied that the Government agent had asked him for the PPSH kit, and also denied that he had spoken soon thereafter about the PPSH kit to someone at InterOrdnance. App. 120-121; Supp.App. 11-12. The Government claimed these statements were false, charged Rita with perjury, making false statements, and obstructing justice, and, after a jury trial, obtained convictions on all counts. App. 7-13, 94, 103.

B

The parties subsequently proceeded to sentencing. Initially, a probation officer, with the help of the parties, and after investigating the background both of the offenses and of the offender, prepared a presentence report. See Fed. Rules Crim. Proc. 32(c)-(d); 18 U.S.C. § 3552(a). The completed report describes "offense characteristics," "offender characteristics," and other matters that might be relevant to the sentence, and then calculates a Guidelines sentence. The report also sets forth factors potentially relevant to a departure from the Guidelines or relevant to the imposition of an other-than-Guidelines sentence. It ultimately makes a sentencing recommendation based on the Guidelines. App. 115-136.

In respect to "offense characteristics," for example, the report points out that the five counts of conviction all stem from a single incident. *Id.,* at 122. Hence, pursuant to the Guidelines, the report, in calculating a recommended sentence, groups the five counts of conviction together, treating them as if they amounted to the single most serious count among them (and ignoring all others). See USSG § 3D1.1. The single most serious offense in Rita's case is "perjury." The relevant Guideline, § 2J1.3(c)(1), instructs the sentencing court (and the probation officer) to calculate the Guidelines sentence for "perjury ... in respect to a criminal offense" by applying the Guideline for an " accessory after the fact," as to that criminal offense. § 2X3.1. And that latter Guideline says that the judge, for calculation purposes, should take as a

base offense level, a level that is "6 levels lower than the offense level for the *underlying offense,*" (emphasis added) (the offense that the perjury may have helped someone commit). Here the " underlying offense" consisted of InterOrdnance's possible violation of the machinegun registration law. App. 124; USSG § 2M5.2 (providing sentence for violation of 22 U.S.C. § 2778(b)(2), importation of defense articles without authorization). The base offense level for the gun registration crime is 26. See USSG § 2M5.2. Six levels less is 20. And 20, says the presentence report, is the base offense level applicable to Rita for purposes of Guidelines sentence calculation. App. 45.

**\*4** The presentence report next considers Rita's " Criminal History." *Id.,* at 125. Rita was convicted in May 1986, and sentenced to five years' probation for making false statements in connection with the purchase of firearms. Because this conviction took place more than 10 years before the present offense, it did not count against Rita. And because Rita had no other relevant convictions, the Guidelines considered him as having no "criminal history points." *Ibid.* The report consequently places Rita in criminal history category I, the lowest category for purposes of calculating a Guidelines' sentence.

The report goes on to describe other "Offender Characteristics." *Id.,* at 126. The description includes Rita's personal and family data, Rita's physical condition (including a detailed description of ailments), Rita's mental and emotional health, the lack of any history of substance abuse, Rita's vocational and nonvocational education, and Rita's employment record. It states that he served in the Armed Forces for over 25 years, on active duty and in the Reserve. During that time he received 35 commendations, awards, or medals of different kinds. The report analyzes Rita's financial condition. *Id.,* at 126-132.

Ultimately, the report calculates the Guidelines sentencing range. *Id.,* at 132. The Guidelines specify for base level 20, criminal history category I, a sentence of 33-to-41 months' imprisonment. *Ibid* . The report adds that there "appears to be no circumstance or combination of circumstances that warrant a departure from the prescribed sentencing

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----

Page 7

--- S.Ct. ----, 2007 WL 1772146 (U.S.)
**(Cite as: --- S.Ct. ----)**

guidelines." *Id.,* at 133.

C

**\*5** At the sentencing hearing, both Rita and the Government presented their sentencing arguments. Each side addressed the report. Rita argued for a sentence outside (and lower than) the recommended Guidelines 33-to-41 month range.

The judge made clear that Rita's argument for a lower sentence could take either of two forms. First, Rita might argue *within the Guidelines' framework,* for a departure from the applicable Guidelines range on the ground that his circumstances present an "atypical case" that falls outside the "heartland" to which the United States Sentencing Commission intends each individual Guideline to apply. USSG § 5K2.0(a)(2). Second, Rita might argue that, independent of the Guidelines, application of the sentencing factors set forth in 18 U.S.C. § 3553(a) (2000 ed. and Supp. IV) warrants a lower sentence. See *Booker,* 543 U.S., at 259-260.

Thus, the judge asked Rita's counsel, "Are you going to put on evidence to show that [Rita] should be getting a downward departure, or under 3553, your client would be entitled to a different sentence than he should get under sentencing guidelines?" App. 52. And the judge later summarized:
"[Y]ou're asking for a departure from the guidelines or a sentence under 3553 that is lower than the guidelines, and here are the reasons:
"One, he is a vulnerable defendant because he's been involved in [government criminal justice] work which has caused people to become convicted criminals who are in prison and there may be retribution against him.
"Two, his military experience.... " *Id.,* at 64-65.

Counsel agreed, while adding that Rita's poor physical condition constituted a third reason. And counsel said that he rested his claim for a lower sentence on "[j]ust [those] three" special circumstances, "[p]hysical condition, vulnerability in prison and the military service." *Id.,* at 65. Rita presented evidence and argument related to these three factors. The Government, while not asking for

a sentence higher than the report's recommended Guidelines range, said that Rita's perjury had interfered with the Government's potential " obstruction of justice" claim against InterOrdnance and that Rita, as a former Government criminal justice employee, should have known better than to commit perjury. *Id.,* at 74-77. The sentencing judge asked questions about each factor.

After hearing the arguments, the judge concluded that he was "unable to find that the [report's recommended] sentencing guideline range ... is an inappropriate guideline range for that, and under 3553 ... the public needs to be protected if it is true, and I must accept as true the jury verdict." *Id.,* at 87. The court concluded: "So the Court finds that it is appropriate to enter" a sentence at the bottom of the Guidelines range, namely a sentence of imprisonment "for a period of 33 months." *Ibid.*

D

**\*6** On appeal, Rita argued that his 33-month sentence was "unreasonable" because (1) it did not adequately take account of "the defendant's history and characteristics," and (2) it "is greater than necessary to comply with the purposes of sentencing set forth in 18 U.S.C. § 3553(a)(2)." Brief for Appellant in No. 05-4674 (CA4), pp. i, 8. The Fourth Circuit observed that it must set aside a sentence that is not "reasonable." The Circuit stated that "a sentence imposed within the properly calculated Guidelines range ... is presumptively reasonable." It added that "while we believe that the appropriate circumstances for imposing a sentence outside the guideline range will depend on the facts of individual cases, we have no reason to doubt that most sentences will continue to fall within the applicable guideline range." The Fourth Circuit then rejected Rita's arguments and upheld the sentence. *Ibid.* (internal quotation marks omitted).

E

Rita petitioned for a writ of certiorari. He pointed out that the Circuits are split as to the use of a presumption of reasonableness for

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

within-Guidelines sentences. Compare *United States v. Dorcely,* 454 F.3d 366, 376 (C.A.D.C.2006) (uses presumption); *United States v. Green,* 436 F.3d 449, 457 (C.A.4 2006) (same); *United States v. Alonzo,* 435 F.3d 551, 554 (C.A.5 2006) (same); *United States v. Williams,* 436 F.3d 706, 708 (C.A.6 2006) (same); *United States v. Mykytiuk,* 415 F.3d 606, 608 (C.A.7 2005) (same); *United States v. Lincoln,* 413 F.3d 716, 717 (C.A.8 2005) (same); and *United States v. Kristl,* 437 F.3d 1050, 1053-1054 (C.A.10 2006) *(per curiam)* (same), with *United States v. Jimenez-Beltre,* 440 F.3d 514, 518 (C.A.1 2006) (en banc) (does not use presumption), *United States v. Fernandez,* 443 F.3d 19, 27 (C.A.2 2006) (same); *United States v. Cooper,* 437 F.3d 324, 331 (C.A.3 2006) (same); and *United States v. Talley,* 431 F.3d 784, 788 (C.A.11 2005) *(per curiam)* (same).

We consequently granted Rita's petition. We agreed to decide whether a circuit court may afford a " presumption of reasonableness" to a " within-Guidelines" sentence. We also agreed to decide whether the District Court properly analyzed the relevant sentencing factors and whether, given the record, the District Court's ultimate choice of a 33-month sentence was "unreasonable."

## II

The first question is whether a court of appeals may apply a presumption of reasonableness to a district court sentence that reflects a proper application of the Sentencing Guidelines. We conclude that it can.

## A

[1] For one thing, the presumption is not binding. It does not, like a trial-related evidentiary presumption, insist that one side, or the other, shoulder a particular burden of persuasion or proof lest they lose their case. C.f., *e.g., Raytheon Co. v. Hernandez,* 540 U.S. 44, 49-50, n. 3, 124 S.Ct. 513, 157 L.Ed.2d 357 (2003) (citing *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 143, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000), and *McDonnell Douglas Corp. v. Green,* 411 U.S. 792,

802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Nor does the presumption reflect strong judicial deference of the kind that leads appeals courts to grant greater factfinding leeway to an expert agency than to a district judge. Rather, the presumption reflects the fact that, by the time an appeals court is considering a within-Guidelines sentence on review, *both* the sentencing judge and the Sentencing Commission will have reached the *same* conclusion as to the proper sentence in the particular case. That double determination significantly increases the likelihood that the sentence is a reasonable one.

Further, the presumption reflects the nature of the Guidelines-writing task that Congress set for the Commission and the manner in which the Commission carried out that task. In instructing both the *sentencing judge* and the *Commission* what to do, Congress referred to the basic sentencing objectives that the statute sets forth in 18 U.S.C. § 3553(a) (2000 ed. and Supp. IV). That provision tells the *sentencing judge* to consider (1) offense and offender characteristics; (2) the need for a sentence to reflect the basic aims of sentencing, namely (a) "just punishment" (retribution), (b) deterrence, (c) incapacitation, (d) rehabilitation; (3) the sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted disparities; and (7) the need for restitution. The provision also tells the sentencing judge to "impose a sentence sufficient, but not greater than necessary, to comply with" the basic aims of sentencing as set out above.

**\*7** Congressional statutes then tell the *Commission* to write Guidelines that will carry out these same § 3553(a) objectives. Thus, 28 U.S.C. § 991(b) indicates that one of the Commission's basic objectives is to "assure the meeting of the purposes of sentencing as set forth in [§ 3553(a)(2) ]." The provision adds that the Commission must seek to " provide certainty and fairness" in sentencing, to " avoi[d] unwarranted sentencing disparities," to " maintai[n] sufficient flexibility to permit individualized sentences when warranted by mitigating or aggravating factors not taken into account in the establishment of general sentencing practices," and to "reflect, to the extent practicable

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----, 2007 WL 1772146 (U.S.)
**(Cite as: --- S.Ct. ----)**

[sentencing-relevant] advancement in [the] knowledge of human behavior." Later provisions specifically instruct the Commission to write the Guidelines with reference to this statement of purposes, the statement that itself refers to § 3553(a) . See 28 U.S.C. §§ 994(f), and 994(m).

The upshot is that the sentencing statutes envision both the sentencing judge and the Commission as carrying out the same basic § 3553(a) objectives, the one, at retail, the other at wholesale.

The Commission has made a serious, sometimes controversial, effort to carry out this mandate. The Commission, in describing its Guidelines-writing efforts, refers to these same statutory provisions. It says that it has tried to embody in the Guidelines the factors and considerations set forth in § 3553(a). The Commission's introductory statement recognizes that Congress "foresees guidelines that will further the basic purposes of criminal punishment, *i.e.,* deterring crime, incapacitating the offender, providing just punishment, and rehabilitating the offender." USSG § 1A.1, intro to comment., pt. A, ¶ 2 (The Statutory Mission). It adds that Congress "sought *uniformity* in sentencing by narrowing the wide disparity in sentences imposed by different federal courts for similar criminal conduct," as well as "*proportionality*" in sentencing through a system that imposes appropriately different sentences for criminal conduct of different severity." *Ibid.* The Basic Approach.)

The Guidelines commentary explains how, despite considerable disagreement within the criminal justice community, the Commission has gone about writing Guidelines that it intends to embody these ends. It says, for example, that the goals of *uniformity* and *proportionality* often conflict. The commentary describes the difficulties involved in developing a practical sentencing system that sensibly reconciles the two ends. It adds that a " philosophical problem arose when the Commission attempted to reconcile the differing perceptions of the purposes of criminal punishment." Some would emphasize moral culpability and "just punishment"; others would emphasize the need for "crime control. " Rather than choose among differing practical and

philosophical objectives, the Commission took an " empirical approach," beginning with an empirical examination of 10,000 presentence reports setting forth what judges had done in the past and then modifying and adjusting past practice in the interests of greater rationality, avoiding inconsistency, complying with congressional instructions, and the like. *Id.,* ¶ 3, at 3.

**\*8** The Guidelines as written reflect the fact that the Sentencing Commission examined tens of thousands of sentences and worked with the help of many others in the law enforcement community over a long period of time in an effort to fulfill this statutory mandate. They also reflect the fact that different judges (and others) can differ as to how best to reconcile the disparate ends of punishment.

The Commission's work is ongoing. The statutes and the Guidelines themselves foresee continuous evolution helped by the sentencing courts and courts of appeals in that process. The sentencing courts, applying the Guidelines in individual cases may depart (either pursuant to the Guidelines or, since *Booker,* by imposing a non-Guidelines sentence). The judges will set forth their reasons. The Courts of Appeals will determine the reasonableness of the resulting sentence. The Commission will collect and examine the results. In doing so, it may obtain advice from prosecutors, defenders, law enforcement groups, civil liberties associations, experts in penology, and others. And it can revise the Guidelines accordingly. See generally 28 U.S.C. § 994(p) and note following § 994 (Commission should review and amend Guidelines as necessary, and Congress has power to revoke or amend Guidelines); *Mistretta v. United States,* 488 U.S. 361, 393-394, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989); USSG § 1B1.10(c) (listing 24 amendments promulgated in response to evolving sentencing concerns); USSG § 1A1.1, comment.

The result is a set of Guidelines that seek to embody the § 3553(a) considerations, both in principle and in practice. Given the difficulties of doing so, the abstract and potentially conflicting nature of § 3553(a)'s general sentencing objectives, and the differences of philosophical view among those who work within the criminal justice community as to

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----

Page 10

--- S.Ct. ----, 2007 WL 1772146 (U.S.)
**(Cite as: --- S.Ct. ----)**

how best to apply general sentencing objectives, it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives.

An individual judge who imposes a sentence within the range recommended by the Guidelines thus makes a decision that is fully consistent with the Commission's judgment in general. Despite Justice SOUTER's fears to the contrary, *post,* at 7-9 (dissenting opinion), the courts of appeals' "reasonableness" presumption, rather than having independent legal effect, simply recognizes the real-world circumstance that when the judge's discretionary decision accords with the Commission's view of the appropriate application of § 3553(a) in the mine run of cases, it is probable that the sentence is reasonable. Indeed, even the Circuits that have declined to adopt a formal presumption also recognize that a Guidelines sentence will usually be reasonable, because it reflects both the Commission's and the sentencing court's judgment as to what is an appropriate sentence for a given offender. See *Fernandez,* 443 F.2d, at 27; *Cooper,* 437 F.3d, at 331; *Talley,* 431 F.3d, at 788.

**\*9** We repeat that the presumption before us is an *appellate* court presumption. Given our explanation in *Booker* that appellate "reasonableness" review merely asks whether the trial court abused its discretion, the presumption applies only on appellate review. The sentencing judge, as a matter of process, will normally begin by considering the presentence report and its interpretation of the Guidelines. 18 U.S.C. § 3552(a); Fed. Rule Crim. Proc. 32. He may hear arguments by prosecution or defense that the Guidelines sentence should not apply, perhaps because (as the Guidelines themselves foresee) the case at hand falls outside the "heartland" to which the Commission intends individual Guidelines to apply, USSG § 5K2.0, perhaps because the Guidelines sentence itself fails properly to reflect § 3553(a) considerations, or perhaps because the case warrants a different sentence regardless. See Rule 32(f). Thus, the sentencing court subjects the defendant's sentence to the thorough adversarial testing contemplated by federal sentencing procedure. See Rules 32(f), (h),

(i)(C) and (i)(D); see also *Burns v. United States,* 501 U.S. 129, 136, 111 S.Ct. 2182, 115 L.Ed.2d 123 (1991) (recognizing importance of notice and meaningful opportunity to be heard at sentencing). In determining the merits of these arguments, the sentencing court does not enjoy the benefit of a legal presumption that the Guidelines sentence should apply. *Booker,* 543 U.S., at 259-260.

**B**

**[2]** Rita and his supporting *amici* make two further arguments against use of the presumption. First, Rita points out that many individual Guidelines apply higher sentences in the presence of special facts, for example, brandishing a weapon. In many cases, the sentencing judge, not the jury, will determine the existence of those facts. A pro-Guidelines "presumption of reasonableness" will increase the likelihood that courts of appeals will affirm such sentences, thereby increasing the likelihood that sentencing judges will impose such sentences. For that reason, Rita says, the presumption raises Sixth Amendment "concerns." Brief for Petitioner 28.

In our view, however, the presumption, even if it increases the likelihood that the judge, not the jury, will find "sentencing facts," does not violate the Sixth Amendment. This Court's Sixth Amendment cases do not automatically forbid a sentencing court to take account of factual matters not determined by a jury and to increase the sentence in consequence. Nor do they prohibit the sentencing judge from taking account of the Sentencing Commission's factual findings or recommended sentences. See *Cunningham v. California,* 549 U.S. ----, --------- (2007) (slip op., at 8-9), (citing *Booker, supra,* at 243-244; *Blakely v. Washington,* 542 U.S. 296, 304-305, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004); *Ring v. Arizona,* 536 U.S. 584, 602, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002); and *Apprendi v. New Jersey,* 530 U.S. 466, 471, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)).

**\*10** The Sixth Amendment question, the Court has said, is whether the law *forbids* a judge to increase a defendant's sentence *unless* the judge finds facts

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----, 2007 WL 1772146 (U.S.)
**(Cite as: --- S.Ct. ----)**

that the jury did not find (and the offender did not concede). *Blakely, supra,* at 303-304 ("When a judge inflicts punishment that the jury's verdict alone does not allow, the jury has not found all the facts which the law makes essential to the punishment and the judge exceeds his proper authority" (internal quotation marks and citation omitted)); see *Cunningham, supra,* at ----, (slip op., 10, 11) (discussing *Blakely* ) ("The judge could not have sentenced Blakely above the standard range without finding the additional fact of deliberate cruelty," "[b]ecause the judge in Blakely's case could not have imposed a sentence outside the standard range without finding an additional fact, the top of that range ... was the relevant" maximum sentence for Sixth Amendment purposes); *Booker,* 543 U.S., at 244 ("Any fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt"); *id.,* at 232 (discussing *Blakely* ) ("We rejected the State's argument that the jury verdict was sufficient to authorize a sentence within the general 10-year sentence for class B felonies, noting that under Washington law, the judge was *required* to find additional facts in order to impose the greater 90-month sentence") (emphasis in original)).

A nonbinding appellate presumption that a Guidelines sentence is reasonable does not *require* the sentencing judge to impose that sentence. Still less does it *forbid* the sentencing judge from imposing a sentence higher than the Guidelines provide for the jury-determined facts standing alone. As far as the law is concerned, the judge could disregard the Guidelines and apply the same sentence (higher than the statutory minimum or the bottom of the unenhanced Guidelines range) in the absence of the special facts (say, gun brandishing) which, in the view of the Sentencing Commission, would warrant a higher sentence within the statutorily permissible range. Thus, our Sixth Amendment cases do not forbid appellate court use of the presumption.

Justice Scalia concedes that the Sixth Amendment concerns he foresees are not presented by this case.

*Post,* at 7 (concurring in part and concurring in judgment). And his need to rely on *hypotheticals* to make his point is consistent with our view that the approach adopted here will not "raise a multitude of constitutional problems." *Clark v. Martinez,* 543 U.S. 371, 380-381, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005). Similarly, Justice Scalia agrees that we have never held that "the Sixth Amendment prohibits judges from ever finding any facts" relevant to sentencing. *Post,* at 6. In sentencing, as in other areas, district judges at time make mistakes that are substantive. At times, they will impose sentences that are unreasonable. Circuit courts exist to correct such mistakes when they occur. Our decision in *Booker* recognized as much, 543 U.S., at 260-264. *Booker* held unconstitutional that portion of the Guidelines that made them mandatory. *Id.,* at 233-234, 243-244. It also recognized that when district courts impose discretionary sentences, which are reviewed under normal appellate principles by courts of appeals, such a sentencing scheme will ordinarily raise no Sixth Amendment concern. *Ibid* ; see *id.,* at 233 (opinion for the Court by Stevens, J.) ("Indeed, everyone agrees that the constitutional issues presented by these cases would have been avoided entirely if Congress had omitted from the [federal sentencing statute] the provisions that make the Guidelines binding on district judges" ). That being so, our opinion in *Booker* made clear that today's holding does not violate the Sixth Amendment.

*11 Rita may be correct that the presumption will encourage sentencing judges to impose Guidelines sentences. But we do not see how that fact could change the constitutional calculus. Congress sought to diminish unwarranted sentencing disparity. It sought a Guidelines system that would bring about greater fairness in sentencing through increased uniformity. The fact that the presumption might help achieve these congressional goals does not provide cause for holding the presumption unlawful as long as the presumption remains constitutional. And, given our case law, we cannot conclude that the presumption itself violates the Sixth Amendment.

[3] The fact that we permit courts of appeals to adopt a presumption of reasonableness does not

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----                                                    Page 12

--- S.Ct. ----, 2007 WL 1772146 (U.S.)
**(Cite as: --- S.Ct. ----)**

mean that courts may adopt a presumption of unreasonableness. Even the Government concedes that appellate courts may not presume that every variance from the advisory Guidelines is unreasonable. See Brief for United States 34-35. Several courts of appeals have also rejected a presumption of unreasonableness. See, *e.g., United States v. Howard,* 454 F.3d 700, 703 (C.A.7 2006); *United States v. Matheny,* 450 F.3d 633, 642 (C.A.6 2006); *United States v. Myers,* 439 F.3d 415, 417 (C.A.8 2006); *United States v. Moreland,* 437 F.3d 424, 433 (C.A.4 2006). However, a number of circuits adhere to the proposition that the strength of the justification needed to sustain an outside-Guidelines sentence varies in proportion to the degree of the variance. See, *e.g., United States v. Smith,* 445 F.3d 1, 4 (C.A.1 2006); *United States v. Moreland,* 437 F.3d 424, 434 (C.A.4 2006); *United States v. Armendariz,* 451 F.3d 352, 358 (C.A.5 2006); *United States v. Davis,* 458 F.3d 491, 496 (C.A.6 2006); *United States v. Dean,* 414 F.3d 725, 729 (C.A.7 2005); *United States v. Dalton,* 404 F.3d 1029, 1033 (C.A.8 2005); *United States v. Bishop,* 469 F.3d 896, 907 (C.A.10 2006); *United States v. Crisp,* 454 F.3d 1285, 1291-1292 (C.A.11 2006). We will consider that approach next Term in *United States v. Gall,* No. 06-7949.

Second, Rita and his *amici* claim that use of a proGuidelines presumption on appeal conflicts with Congress' insistence that sentencing judges apply the factors set forth in 18 U.S.C. § 3553(a) (2000 ed., Supp. IV) (and that the resulting sentence be " sufficient, but not greater than necessary," to comply with the purposes" of sentencing set forth in that statute). We have explained above, however, why we believe that, where judge and Commission *both* determine that the Guidelines sentences is an appropriate sentence for the case at hand, that sentence likely reflects the § 3553(a) factors (including its "not greater than necessary" requirement). See *supra,* at 8. This circumstance alleviates any serious general conflict between § 3553(a) and the Guidelines, for the purposes of appellate review. And, for that reason, we find that nothing in § 3553(a) renders use of the presumption unlawful.

                              III

\*12 We next turn to the question whether the District Court properly analyzed the relevant sentencing factors. In particular, Rita argues that the court took inadequate account of § 3553(c) (2000 ed., Supp. IV), a provision that requires a sentencing judge, "at the time of sentencing," to " state in open court the reasons for its imposition of the particular sentence." In our view, given the straightforward, conceptually simple arguments before the judge, the judge's statement of reasons here, though brief, was legally sufficient.

The statute does call for the judge to "state" his " reasons." And that requirement reflects sound judicial practice. Judicial decisions are reasoned decisions. Confidence in a judge's use of reason underlies the public's trust in the judicial institution. A public statement of those reasons helps provide the public with the assurance that creates that trust.

That said, we cannot read the statute (or our precedent) as insisting upon a full opinion in every case. The appropriateness of brevity or length, conciseness or detail, when to write, what to say, depends upon circumstances. Sometimes a judicial opinion responds to every argument; sometimes it does not; sometimes a judge simply writes the word "granted," or "denied" on the face of a motion while relying upon context and the parties' prior arguments to make the reasons clear. The law leaves much, in this respect, to the judge's own professional judgment.

In the present context, a statement of reasons is important. The sentencing judge should set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decisionmaking authority. See, *e.g., United States v. Taylor,* 487 U.S. 326, 336-337, 108 S.Ct. 2413, 101 L.Ed.2d 297 (1988). Nonetheless, when a judge decides simply to apply the Guidelines to a particular case, doing so will not necessarily require lengthy explanation. Circumstances may well make clear that the judge rests his decision upon the Commission's own reasoning that the Guidelines sentence is a proper sentence (in terms of § 3353(a)

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

and other congressional mandates) in the typical case, and that the judge has found that the case before him is typical. Unless a party contests the Guidelines sentence generally under § 3553(a)-that is argues that the Guidelines reflect an unsound judgment, or, for example, that they do not generally treat certain defendant characteristics in the proper way-or argues for departure, the judge normally need say no more. Cf. § 3553(c)(2) (2000 ed., Supp. IV). (Although, often at sentencing a judge will speak at length to a defendant, and this practice may indeed serve a salutary purpose.)

[4] Where the defendant or prosecutor presents nonfrivolous reasons for imposing a different sentence, however, the judge will normally go further and explain why he has rejected those arguments. Sometimes the circumstances will call for a brief explanation; sometimes they will call for a lengthier explanation. Where the judge imposes a sentence outside the Guidelines, the judge will explain why he has done so. To our knowledge, an ordinary explanation of judicial reasons as to why the judge has, or has not, applied the Guidelines triggers no Sixth Amendment "jury trial" requirement. Cf. *Booker,* 543 U.S., at 233 ("For when a trial judge exercises his discretion to select a specific sentence within a defined range, the defendant has no right to a jury determination of the facts that the judge deems relevant") and *id.,* at 242 (requirement of finding, not articulation of it, creates Sixth Amendment problem).

*13 By articulating reasons, even if brief, the sentencing judge not only assures reviewing courts (and the public) that the sentencing process is a reasoned process but also helps that process evolve. The sentencing judge has access to, and greater familiarity with, the individual case and the individual defendant before him than the Commission or the appeals court. That being so, his reasoned sentencing judgment, resting upon an effort to filter the Guidelines' general advice through § 3553(a)'s list of factors, can provide relevant information to both the court of appeals and ultimately the Sentencing Commission. The reasoned responses of these latter institutions to the sentencing judge's explanation should help the Guidelines constructively evolve over time, as both

Congress and the Commission foresaw. See generally *supra,* at 11.

[5] In the present case the sentencing judge's statement of reasons was brief but legally sufficient. Rita argued for a downward departure from the 33-to-41 month Guidelines sentence on the basis of three sets of special circumstances: health, fear of retaliation in prison, and military record. See App. 40-47. He added that, in any event, these same circumstances warrant leniency beyond that contemplated by the Guidelines.

The record makes clear that the sentencing judge listened to each argument. The judge considered the supporting evidence. The judge was fully aware of defendant's various physical ailments and imposed a sentence that takes them into account. The judge understood that Rita had previously worked in the immigration service where he had been involved in detecting criminal offenses. And he considered Rita's lengthy military service, including over 25 years of service, both on active duty and in the Reserve, and Rita's receipt of 35 medals, awards, and nominations.

The judge then simply found these circumstances insufficient to warrant a sentence lower than the Guidelines range of 33 to 45 months. *Id.,* at 87. He said that this range was not "inappropriate." (This, of course, is not the legal standard for imposition of sentence, but taken in context it is plain that the judge so understood.) He immediately added that he found that the 33-month sentence at the bottom of the Guidelines range was "appropriate." *Ibid.* He must have believed that there was not much more to say.

We acknowledge that the judge might have said more. He might have added explicitly that he had heard and considered the evidence and argument; that (as no one before him denied) he thought the Commission in the Guidelines had determined a sentence that was proper in the minerun of roughly similar perjury cases; and that he found that Rita's personal circumstances here were simply not different enough to warrant a different sentence. But context and the record make clear that this, or similar, reasoning, underlies the judge's conclusion.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Where a matter is as conceptually simple as in the case at hand and the record makes clear that the sentencing judge considered the evidence and arguments, we do not believe the law requires the judge to write more extensively.

## IV

**\*14** [6] We turn to the final question: Was the Court of Appeals, after applying its presumption, legally correct in holding that Rita's sentence (a sentence that applied, and did not depart from, the relevant sentencing Guideline) was not " unreasonable"? In our view, the Court of Appeals' conclusion was lawful.

As we previously said, see Part I, *supra,* the crimes at issue are perjury and obstruction of justice. In essence those offenses involved the making of knowingly false, material statements under oath before a grand jury, thereby impeding its criminal investigation. The Guidelines provide for a typical such offense a base offense level of 20, 6 levels below the level provided for a simple violation of the crime being investigated (here the unlawful importation of machineguns). The offender, Rita, has no countable prior offenses and consequently falls within criminal history category I. The intersection of base offense level 20 and criminal history category I sets forth a sentencing range of imprisonment of 33 to 45 months.

Rita argued at sentencing that his circumstances are special. He based this argument upon his health, his fear of retaliation, and his prior military record. His sentence explicitly takes health into account by seeking assurance that the Bureau of Prisons will provide appropriate treatment. The record makes out no special fear of retaliation, asserting only that the threat is one that any former law enforcement official might suffer. Similarly, though Rita has a lengthy and distinguished military record, he did not claim at sentencing that military service should ordinarily lead to a sentence more lenient than the sentence the Guidelines impose. Like the District Court and the Court of Appeals, we simply cannot say that Rita's special circumstances are special enough that, in light of § 3553(a), they require a

sentence lower than the sentence the Guidelines provide.

Finally, Rita and supporting *amici* here claim that the Guidelines sentence is not reasonable under § 3553(a) because it expressly declines to consider various personal characteristics of the defendant, such as physical condition, employment record, and military service, under the view that these factors are "not ordinarily relevant." USSG §§ 5H1.4, 5H1.5, 5H1.11. Rita did not make this argument below, and we shall not consider it.

\* \* \*

**\*15** For the foregoing reasons, the judgment of the Court of Appeals is

*Affirmed.*
Justice STEVENS, with whom Justice GINSBURG joins as to all but Part II, concurring.
It is no secret that the Court's remedial opinion in *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), was not unanimous. See *id.,* at 272 (Stevens, J., dissenting). But *Booker* is now settled law and must be accepted as such. See B. Cardozo, The Nature of the Judicial Process 149 (1921) ("[T]he labor of judges would be increased almost to the breaking point if every past decision could be reopened in every case, and one could not lay one's own course of bricks on the secure foundation of the courses laid by others who had gone before him"). Therefore, our task today is to apply *Booker* 's "reasonableness" standard to a District Judge's decision to impose a sentence within the range recommended by United States Sentencing Guidelines that are now advisory, rather than binding.

## I

Simply stated, *Booker* replaced the *de novo* standard of review required by 18 U.S.C. § 3742(e) with an abuse-of-discretion standard that we called " 'reasonableness' " review. 543 U.S., at 262. We noted in *Booker* that the *de novo* standard was a recent addition to the law. Prior to 2003, appellate

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----

--- S.Ct. ----, 2007 WL 1772146 (U.S.)
**(Cite as: --- S.Ct. ----)**

Page 15

courts reviewed sentencing departures for abuse of discretion under our decision in *Koon v. United States,* 518 U.S. 81, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996). In 2003, however, Congress overruled *Koon* and added the *de novo* standard to § 3742(e). See Prosecutorial Remedies and Other Tools to end the Exploitation of Children Today Act of 2003, § 401(d)(1), 117 Stat. 670. Recognizing that "the reasons for th[is] revisio[n]-to make Guidelines sentencing even more mandatory than it had been-... ceased to be relevant" in light of the Court's constitutional holding,[FN1] *Booker* excised the portion of § 3742(e) that directed courts of appeals to apply the *de novo* standard. 543 U.S., at 261. Critically, we did not touch the portions of § 3742(e) requiring appellate courts to "give due regard to the opportunity of the district court to judge the credibility of the witnesses," to "accept the findings of fact of the district court unless they are clearly erroneous," and to "give due deference to the district court's application of the guidelines to the facts." By leaving those portions of the statute intact while severing the portion mandating a *de novo* standard of review, *Booker* restored the abuse-of-discretion standard identified in three earlier cases: *Pierce v. Underwood,* 487 U.S. 552, 558-560, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988), *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 403-405, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990), and *Koon*. See *Booker,* 543 U.S., at 260.[FN2]

FN1. See 543 U.S., at 233 (opinion for the Court by STEVENS, J.) ("We have never doubted the authority of a judge to exercise broad discretion in imposing a sentence within a statutory range. Indeed, everyone agrees that the constitutional issues presented by these cases would have been avoided entirely if Congress had omitted from the [Sentencing Reform Act of 1984] the provisions that make the Guidelines binding on district judges" (citations omitted)).

FN2. In fact, *Booker* expressly equated the new "reasonableness" standard with the old abuse-of-discretion standard used to review sentencing departures. See *id.,* at

262 (" 'Reasonableness' standards are not foreign to sentencing law. The Act has long required their use in important sentencing circumstances-both *on review of departures,* see 18 U.S.C. § 3742(e)(3) (1994 ed.), and on review of sentences imposed where there was no applicable Guideline, see §§ 3742(a)(4), (b)(4), (e)(4) " (emphasis added)).

In *Pierce,* we considered whether the District Court had properly awarded attorney's fees based on a determination that the Government's litigation position was not "substantially justified" within the meaning of the Equal Access to Justice Act, 28 U.S.C. § 2412(d). Because the Act did not specify a standard of review, we found it necessary to rely on several "significant relevant factors" that persuaded us to apply an " 'abuse of discretion' " standard. 487 U.S., at 559. One factor was that a district judge was " 'better positioned' " than an appellate judge to decide the issue. *Id.,* at 560 (quoting *Miller v. Fenton,* 474 U.S. 104, 114, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985)). We noted that a district court, through its participation in "settlement conferences and other pretrial activities," "may have insights not conveyed by the record, into such matters as whether particular evidence was worthy of being relied upon." 487 U.S., at 560. We likewise noted that "even where the district judge's full knowledge of the factual setting can be acquired by the appellate court, that acquisition will often come at unusual expense." *Ibid.* A second factor that we found significant was the impracticability of formulating a rule of decision for an issue that may involve " 'multifarious, fleeting, special, narrow facts that utterly resist generalization.' " *Id.,* at 561-562. In *Cooter & Gell,* we held that both of these factors supported an "abuse-of-discretion" standard for review of a district judge's imposition of sanctions for violations of Rule 11 of the Federal Rules of Civil Procedure. See 496 U.S., at 403-405. A third factor, the District Court's special knowledge about "the local bar's litigation practices, " also supported the abuse-of-discretion standard. *Id.,* at 404. We further noted that "[d]eference to the determination of courts on the front lines of litigation will enhance these courts' ability to control the litigants before them." *Ibid.*

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----, 2007 WL 1772146 (U.S.)
**(Cite as: --- S.Ct. ----)**

**\*16** Recognizing that these factors bear equally upon a trial judge's sentencing decision, *Koon* expressly applied the principles of *Pierce* and *Cooter & Gell* to the sentencing context. See *Koon,* 518 U.S., at 99. We adopted the same abuse-of-discretion standard, unanimously holding that a district court's decision to depart from the Guidelines "will in most cases be due substantial deference, for it embodies the traditional exercise of discretion by a sentencing court." *Id,* at 98. Echoing our earlier opinions, we added that "[d]istrict courts have an institutional advantage over appellate courts " because they "must make a refined assessment of the many facts bearing on the outcome, informed by its vantage point and day-to-day experience in criminal sentencing." *Ibid.* We also relied on the following statement in our opinion in *Williams v. United States,* 503 U.S. 193, 112 S.Ct. 1112, 117 L.Ed.2d 341 (1992):
"The development of the guideline sentencing regime has not changed our view that, except to the extent specifically directed by statute, 'it is not the role of an appellate court to substitute its judgment for that of the sentencing court as to the appropriateness of a particular sentence.' " *Id.,* at 205 (quoting *Solem v. Helm,* 463 U.S. 277, 290, n. 16, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983)).

**\*17** These basic considerations about the nature of sentencing have not changed in a post-*Booker* world. While the specific holding in *Koon* concerned only the scope of the trial judge's discretion on whether to depart from the Guidelines, now that the Guidelines are no longer mandatory, our reasoning applies with equal force to the sentencing judge's decision " 'as to the appropriateness of a particular sentence.' " *Williams,* 503 U.S., at 205. After *Booker,* appellate courts are now to assess a district court's exercise of discretion "with regard to § 3553(a)." 543 U.S., at 261. As we explained, "Section 3553(a) remains in effect, and sets forth numerous factors that guide sentencing. Those factors in turn will guide appellate courts, as they have in the past, in determining whether a sentence is unreasonable." *Ibid.*

Guided by these § 3553(a) factors, *Booker* 's

abuse-of-discretion standard directs appellate courts to evaluate what motivated the District Judge's individualized sentencing decision. While reviewing courts may presume that a sentence within the advisory Guidelines is reasonable, appellate judges must still always defer to the sentencing judge's individualized sentencing determination. As we stated in *Koon,* "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." 518 U.S., at 113. The Commission has not developed any standards or recommendations that affect sentencing ranges for many individual characteristics. Matters such as age, education, mental or emotional condition, medical condition (including drug or alcohol addiction), employment history, lack of guidance as a youth, family ties, or military, civic, charitable, or public service are not ordinarily considered under the Guidelines. See United States Sentencing Commission, Guidelines Manual §§ 5H1.1-6, 11, and 12 (Nov.2006).[FN3] These are, however, matters that § 3553(a) authorizes the sentencing judge to consider. See, *e.g.,* 18 U.S.C. § 3553(a)(1). As such, they are factors that an appellate court must consider under *Booker* 's abuse-of-discretion standard.

FN3. See also Breyer, The Federal Sentencing Guidelines and the Key Compromises Upon Which They Rest, 17 Hofstra L.Rev. 1, 19-20 (1988) ( "The Commission extensively debated which offender characteristics should make a difference in sentencing; that is, which characteristics were important enough to warrant formal reflection within the Guidelines and which should constitute possible grounds for departure .... Eventually, in light of the arguments based in part on considerations of fairness and in part on the uncertainty as to how a sentencing judge would actually account for the aggravating and/or mitigating factors ... the current offender characteristics rules look primarily to past

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----, 2007 WL 1772146 (U.S.)
**(Cite as: --- S.Ct. ----)**

records of convictions" (footnotes omitted)).

My disagreement with Justice Scalia and Justice Souter rests on the above understanding of *Booker* 's standard of appellate review. I do not join Justice Scalia's opinion because I believe that the purely procedural review he advocates is inconsistent with our remedial opinion in *Booker*, which plainly contemplated that reasonableness review would contain a substantive component. See 543 U.S., at 260-264. After all, a district judge who gives harsh sentences to Yankees fans and lenient sentences to Red Sox fans would not be acting reasonably even if her procedural rulings were impeccable. Moreover, even if some future unusually harsh sentence might violate the Sixth Amendment because it exceeds some yet-to-be-defined judicial standard of reasonableness, Justice Scalia correctly acknowledges this case does not present such a problem. See *post*, at 7 (opinion concurring in part and concurring in judgment) ("Nor is my claim that the Sixth Amendment was violated in this case, for petitioner cannot demonstrate that his relatively low sentence would have been unreasonable if the District Court had relied on nothing but jury-found or admitted facts"); see also *ante*, at 14 ("Justice Scalia concedes that the Sixth Amendment concerns he foresees are not presented by this case. *Post*, at 7 (concurring in part and concurring in judgment). And his need to rely on *hypotheticals* to make his point is consistent with our view that the approach adopted here will not 'raise a multitude of constitutional problems.' *Clark v. Martinez*, 543 U.S. 371, 380-381, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005)"). Such a hypothetical case should be decided if and when it arises. See, *e.g.*, *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 472, 102 S.Ct. 752, 70 L.Ed.2d 700 (1982).

**\*18** As to Justice Souter's opinion, I think he overestimates the "gravitational pull" towards the advisory Guidelines that will result from a presumption of reasonableness. *Post*, at 7 (dissenting opinion). *Booker* 's standard of review allows-indeed, requires-district judges to consider *all* of the factors listed in § 3553(a) and to apply them to the individual defendants before them.

Appellate courts must then give deference to the sentencing decisions made by those judges, whether the resulting sentence is inside or outside the advisory Guidelines range, under traditional abuse-of-discretion principles. As the Court acknowledges, moreover, *presumptively* reasonable does not mean *always* reasonable; the presumption, of course, must be genuinely rebuttable. See *ante*, at 7. I am not blind to the fact that, as a practical matter, many federal judges continued to treat the Guidelines as virtually mandatory after our decision in *Booker*. See *post*, at 7, n. & ensp; 3 (Scalia, J., concurring in part and concurring in judgment). One well-respected federal judge has even written that, "after watching this Court-and the other Courts of Appeals, whether they have formally adopted such a presumption or not-affirm hundreds upon hundreds of within-Guidelines sentences, it seems to me that the rebuttability of the presumption is more theoretical than real." *United States v. Pruitt*, No. 06-3152, 2007 U.S.App. LEXIS 12872, \*35-\*36 (CA10, June 4, 2007) (McConnell, J., concurring). Our decision today makes clear, however, that the rebuttability of the presumption is real. It should also be clear that appellate courts must review sentences individually and deferentially whether they are inside the Guidelines range (and thus potentially subject to a formal " presumption" of reasonableness) or outside that range. Given the clarity of our holding, I trust that those judges who had treated the Guidelines as virtually mandatory during the post-*Booker* interregnum will now recognize that the Guidelines are truly advisory.

Applying this standard, I would affirm the sentence imposed by the District Court. Although I would have imposed a lower sentence had I been the District Judge, I agree that he did not abuse his discretion in making the particular decision that he did. I also agree with the Court that his decision is entitled to added respect because it was consistent with the advice in the Guidelines.

II

**\*19** That said, I do believe that there was a significant flaw in the sentencing procedure in this

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----

--- S.Ct. ----, 2007 WL 1772146 (U.S.)
**(Cite as: --- S.Ct. ----)**

Page 18

case. The petitioner is a veteran who received significant recognition for his service to his country. That aspect of his background is not taken into consideration in the sentencing guidelines and was not mentioned by the District Judge in his explanation of his choice of the sentence that defendant received. I regard this as a serious omission because I think the judge's statement to the defendant, made at the time of sentencing, is an especially important part of the criminal process. If the defendant is convinced that justice has been done in his case-that society has dealt with him fairly-the likelihood of his successful rehabilitation will surely be enhanced. Nevertheless, given the importance of paying appropriate respect to the exercise of a sentencing judge's discretion, I join the Court's opinion and judgment.

Justice SCALIA, with whom Justice THOMAS joins, concurring in part and concurring in the judgment.
In *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), five Justices of this Court, I among them, held that our previous decision in *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), applied to sentences imposed under the Federal Sentencing Guidelines because those Guidelines were mandatory and binding on judges. See 543 U.S., at 233-234, 243-244. We thus reaffirmed that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Id.,* at 244. In response to this constitutional holding, a different majority of five Justices held that the appropriate remedy was to make the Guidelines nonmandatory in all cases and to review sentences on appeal only for reasonableness. See *id.,* at 258-265. I disagreed with the Court's remedial choice, believing instead that the proper remedy was to maintain the mandatory character of the Guidelines and simply to require, for that small category of cases in which a fact was legally essential to the sentence imposed, that the fact be proved to a jury beyond a reasonable doubt or admitted by the defendant. See *id.,* at 272-291 (STEVENS, J., joined by SCALIA

and SOUTER, JJ., dissenting in part).

I do not mean to reopen that debate. As a matter of statutory *stare decisis,* I accept *Booker* 's remedial holding that district courts are no longer bound by the Guidelines and that appellate courts should review the sentences imposed for reasonableness. As should be clear from our need to decide the case today, however, precisely what "reasonableness" review entails is not dictated by *Booker.* As I lamented then, "[t]he worst feature of the scheme is that no one knows-and perhaps no one is meant to know-how advisory Guidelines and ' unreasonableness' review will function in practice." *Id.,* at 311 (SCALIA, J., dissenting in part).

*20 Earlier this Term, the Court intensified its silence when it declined to flesh out what it had in mind in the face of an argument that the form of reasonableness review had constitutional implications. In *Cunningham v. California,* 549 U.S. ---- (2007), Justice Alito defended the constitutionality of California's sentencing system in part by arguing that, even post-*Booker,* some federal sentences would be upheld as reasonable only if the judge makes additional findings of fact beyond those encompassed by the jury verdict or guilty plea. 549 U.S., at ----, and n. 11 (slip op., at 13, and n. 11) (dissenting opinion). The *Cunningham* majority's response, much like the *Booker* remedial opinion, was cryptic. While the Court did not explain *why* Justice Alito was incorrect, it strongly intimated that his premise was wrong: that he had erroneously "anticipate[d]" how "reasonableness review operates in practice." *Cunningham,* 549 U.S., at ----, n. 15 (slip op., at 20, n. 15). Because that question is squarely presented in this case that was then pending, the Court found it "neither necessary nor proper ... to join issue with Justice Alito on this matter," suggesting that all would be revealed in the opinion we issue today. See *id.,* at ----, n. 13 (slip op., at 15, n. 13).

Today has arrived, and the Court has broken its promise. Nothing in the Court's opinion explains why, under the advisory Guidelines scheme, judge-found facts are *never* legally necessary to justify the sentence. By this I mean the Court has failed to establish that every sentence which will be

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----

--- S.Ct. ----, 2007 WL 1772146 (U.S.)
**(Cite as: --- S.Ct. ----)**

imposed under the advisory Guidelines scheme could equally have been imposed had the judge relied upon no facts other than those found by the jury or admitted by the defendant. In fact, the Court implicitly, but quite plainly, acknowledges that this will not be the case, by treating as a permissible post-*Booker* claim petitioner's challenge of his within-Guidelines sentence as substantively excessive. See *ante,* at Part IV. Under the scheme promulgated today, some sentences reversed as excessive will be legally authorized in later cases only because additional judge-found facts are present; and, as Justice Alito argued in *Cunningham,* some lengthy sentences will be affirmed (*i.e.,* held lawful) only because of the presence of aggravating facts, not found by the jury, that distinguish the case from the mine-run. The Court does not even attempt to explain how this is consistent with the Sixth Amendment.

No explanation is given because no explanation is possible. The Court has reintroduced the constitutional defect that *Booker* purported to eliminate. I cannot acquiesce in this course. If a sentencing system is permissible in which some sentences cannot lawfully be imposed by a judge unless the judge finds certain facts by a preponderance of the evidence, then we should have left in place the compulsory Guidelines that Congress enacted, instead of imposing this jerry-rigged scheme of our own. In order to avoid the possibility of a Sixth Amendment violation, which was the object of the *Booker* remedy, district courts must be able, without finding any facts not embraced in the jury verdict or guilty plea, to sentence to the maximum of the *statutory* range. Because, therefore, appellate courts cannot reverse within-range sentences for being too high; and because no one would contend that Congress intended that sentences be reviewed only for being too low; I would hold that reasonableness review cannot contain a substantive component at all. I believe, however, that appellate courts can nevertheless secure some amount of sentencing uniformity through the procedural reasonableness review made possible by the *Booker* remedial opinion.

I

A

**\*21** The Sixth Amendment requires that "[a]ny fact (other than a prior conviction) which is necessary to support a sentence exceeding the maximum authorized by the facts established by a plea of guilty or a jury verdict must be admitted by the defendant or proved to a jury beyond a reasonable doubt." *Booker,* 543 U.S., at 244. Two hypotheticals will suffice to reveal why the notion of excessive sentences within the statutory range, and the ability of appellate courts to reverse such sentences, inexorably produces, in violation of the Sixth Amendment, sentences whose legality is premised on a judge's finding some fact (or combination of facts) by a preponderance of the evidence.

First, consider two brothers with similar backgrounds and criminal histories who are convicted by a jury of respectively robbing two banks of an equal amount of money. Next assume that the district judge finds that one brother, fueled by racial animus, had targeted the first bank because it was owned and operated by minorities, whereas the other brother had selected the second bank simply because its location enabled a quick getaway. Further assume that the district judge imposes the statutory maximum upon both brothers, basing those sentences primarily upon his perception that bank robbery should be punished much more severely than the Guidelines base level advises, but explicitly noting that the racially biased decisionmaking of the first brother further justified his sentence. Now imagine that the appellate court reverses as excessive only the sentence of the nonracist brother. Given the dual holdings of the appellate court, the racist has a valid Sixth Amendment claim that his sentence was reasonable (and hence lawful) only because of the judicial finding of his motive in selecting his victim.[FN1]

FN1. Of course, it may be that some fact other than racial animus would also have sufficed to sustain the increased sentence.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----, 2007 WL 1772146 (U.S.)
**(Cite as: --- S.Ct. ----)**

But it is undeniable that in the case at hand the judicial finding of racial animus filled that role. See *Blakely v. Washington,* 542 U.S. 296, 305, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

Second, consider the common case in which the district court imposes a sentence *within* an advisory Guidelines range that has been substantially enhanced by certain judge-found facts. For example, the base offense level for robbery under the Guidelines is 20, United States Sentencing Commission, Guidelines Manual § 2B3.1(a) (Nov.2006), which, if the defendant has a criminal history of I, corresponds to an advisory range of 33-41 months, *id.,* ch. 5, pt. A, Sentencing Table. If, however, a judge finds that a firearm was discharged, that a victim incurred serious bodily injury, and that more than $5 million was stolen, then the base level jumps by 18, §§ 2B3.1(b)(2), (3), (7), producing an advisory range of 235-293 months, *id.,* ch. 5, pt. A, Sentencing Table. When a judge finds all of those facts to be true and then imposes a within-Guidelines sentence of 293 months, those judge-found facts, or some combination of them, are not merely facts that the judge finds relevant in exercising his discretion; they are the legally essential predicate for his imposition of the 293-month sentence. His failure to find them would render the 293-month sentence unlawful. That is evident because, were the district judge explicitly to find *none* of those facts true and nevertheless to impose a 293-month sentence (simply because he thinks robbery merits seven times the sentence that the Guidelines provide) the sentence would surely be reversed as unreasonably excessive.

**\*22** These hypotheticals are stylized ways of illustrating the basic problem with a system in which district courts lack full discretion to sentence within the statutory range. Under such a system, for every given crime there is some maximum sentence that will be upheld as reasonable based only on the facts found by the jury or admitted by the defendant. *Every* sentence higher than that is legally authorized only by some judge-found fact, in violation of the Sixth Amendment. Appellate courts' excessiveness review will explicitly or implicitly

accept those judge-found facts as justifying sentences that would otherwise be unlawful. The only difference between this system and the pre-*Booker* mandatory Guidelines is that the maximum sentence based on the jury verdict or guilty plea was specified under the latter but must be established by appellate courts, in case-by-case fashion, under the former. This is, if anything, an additional constitutional disease, not a constitutional cure.

To be clear, I am not suggesting that the Sixth Amendment prohibits judges from ever finding any facts. We have repeatedly affirmed the proposition that judges can find facts that help guide their discretion *within* the sentencing range that is authorized by the facts found by the jury or admitted by the defendant. See, *e.g., Booker, supra,* at 233; *Apprendi v. New Jersey,* 530 U.S. 466, 481, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). But there is a fundamental difference, one underpinning our entire *Apprendi* jurisprudence, between facts that *must* be found in order for a sentence to be lawful, and facts that individual judges *choose* to make relevant to the exercise of their discretion. The former, but not the latter, must be found by the jury beyond a reasonable doubt in order "to give intelligible content to the right of jury trial." *Blakely,* 542 U.S., at 305.[FN2]

> FN2. For similar reasons, I recognize that the Sixth Amendment problem with reasonableness review is created only by the lack of district court discretion to impose *high* sentences, since eliminating discretion to impose *low* sentences is the equivalent of judicially creating mandatory minimums, which are not a concern of the Sixth Amendment. See *Harris v. United States,* 536 U.S. 545, 568-569, 122 S.Ct. 2406, 153 L.Ed.2d 524 (2002). But since reasonableness review should not function as a one-way ratchet, *United States v. Booker,* 543 U.S. 220, 257-258, 266, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), we must forswear the notion that sentences can be too low in light of the need to abandon the concept that sentences can be too high.

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----

--- S.Ct. ----, 2007 WL 1772146 (U.S.)
**(Cite as: --- S.Ct. ----)**

I am also not contending that there is a Sixth Amendment problem with the Court's affirmation of a presumption of reasonableness for within-Guidelines sentences. I agree with the Court that such a presumption never itself makes judge-found facts legally essential to the sentence imposed, since it has no direct relevance to whether the sentence would have been *unreasonable* in the *absence* of any judge-found facts. See *ante,* at 12-15.[FN3] Nor is my claim that the Sixth Amendment was violated in this case, for petitioner cannot demonstrate that his relatively low sentence would have been unreasonable if the District Court had relied on nothing but jury-found or admitted facts.

> FN3. For this reason, I do not join Justice Souter's dissent. He wishes to give "district courts [assurance] that the entire sentencing range set by statute is available to them." *Post,* at 8. That is a proper goal-indeed, an essential one to prevent the *Booker* remedy from effectively overturning *Apprendi* and *Blakely.* But eliminating the presumption of reasonableness will not achieve it. In those Circuits that *already* decline to employ the presumption, a within-Guidelines sentence has *never* been reversed as substantively excessive, Brief for New York Council of Defense Lawyers as *Amicus Curiae* 5, refuting the belief that mere elimination of the presumption will destroy the " gravitational pull," *post,* at 7 (Souter, J., dissenting), to stay safely within the Guidelines. The only way to assure district courts that they can deviate from the advisory Guidelines, and to ensure that judge-found facts are never legally essential to the sentence, is to prohibit appellate courts from reviewing the *substantive* sentencing choices made by district courts.

**\*23** Rather, my position is that there will inevitably be *some* constitutional violations under a system of substantive reasonableness review, because there will be some sentences that will be upheld as

reasonable only because of the existence of judge-found facts. *Booker* itself reveals why that reality dooms the construct of reasonableness review established and applied by today's opinion. *Booker* made two things quite plain. First, reasonableness is the standard of review implicitly contained within the Sentencing Reform Act of 1984(SRA). 543 U.S., at 260-261. Second, Congress wanted a uniform system of sentencing review, rather than different schemes depending on whether there were Sixth Amendment problems in particular cases. *Id.,* at 265-267. Thus, if the contours of reasonableness review must be narrowed in *some* cases because of constitutional concerns, then they must be narrowed in *all* cases in light of Congress's desire for a uniform standard of review. The Justices composing today's Court were in total agreement with this principle of statutory interpretation the day *Booker* was decided:
"[W]hen deciding which of two plausible statutory constructions to adopt, a court must consider the necessary consequences of its choice. If one of them would raise a multitude of constitutional problems, the other should prevail-whether or not those constitutional problems pertain to the particular litigant before the Court." *Clark v. Martinez,* 543 U.S. 371, 380-381, 125 S.Ct. 716, 160 L.Ed.2d 734 (2005) (opinion for the Court by SCALIA, J., joined by, *inter alios,* STEVENS, KENNEDY, GINSBURG, and BREYER, JJ.).

Yet they now adopt substantive reasonableness review without offering any rebuttal to my charge of patent constitutional flaw inherent in such review. The one comfort to be found in the Court's opinion-though it does not excuse the failure to apply *Martinez* 's interpretive principle-is that it does not rule out as-applied Sixth Amendment challenges to sentences that would not have been upheld as reasonable on the facts encompassed by the jury verdict or guilty plea. *Ante,* at 14-15; *ante,* at 6 (STEVENS, J., joined by GINSBURG, J., concurring).[FN4]

> FN4. The Court suggests that my reliance on hypotheticals indicates that its interpretation of reasonableness will not create a multitude of constitutional

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----

--- S.Ct. ----, 2007 WL 1772146 (U.S.)
**(Cite as: --- S.Ct. ----)**

Page 22

problems. *Ante*, at 14; see also *ante*, at 6 (STEVENS, J., concurring). Setting aside the question whether the volume of constitutional violations has any relevance to the application of *Martinez*'s interpretive principle, the Court is wrong to think that the constitutional problem today's opinion ignores is hypothetical, merely because I have used hypotheticals to describe it. It is all too real that advisory Guidelines sentences routinely change months and years of imprisonment to decades and centuries on the basis of judge-found facts-as *Booker* itself recognized, see 543 U.S., at 236-237 (citing, *inter alia,* a case in which a defendant's sentence increased from 57 months to 155 years).

B

**\*24** Had the Court bothered to frame objections to the constitutional analysis undertaken above, there are four conceivable candidates.

1

The most simplistic objection is that the Sixth Amendment is not violated because the judge-found facts are made legally necessary by the decision of appellate courts rather than the decision of Congress. This rebuttal errs both in premise and in conclusion.

The premise is wrong because, according to the remedial majority in *Booker,* the facts that excessiveness review renders legally essential are made such by Congress. Reasonableness is the standard of review *implicitly* contained within 18 U.S.C. § 3742 (2000 ed. and Supp. IV). See *Booker, supra,* at 260-261. But the Sixth Amendment would be violated even if appellate courts really were exercising some type of common-law power to prescribe the facts legally necessary to support specific sentences. Neither *Apprendi* nor any of its progeny suggests that violation of the Sixth Amendment depends upon what branch of government has made the prescription. To the contrary, *Booker* flatly rejected the argument that

the mandatory Guidelines were constitutional because it was the Sentencing Commission rather than Congress that specified the facts essential to punishment. See 543 U.S., at 237-239. And for good reason. The Sixth Amendment is "a reservation of jury power." *Blakely,* 542 U.S., at 308 . It makes no difference whether it is a legislature, a Sentencing Commission, or an appellate court that usurps the jury's prerogative. Were it otherwise, this Court could prescribe that the only reasonable sentences are those consistent with the same mandatory Guidelines that *Booker* invalidated. And the California Supreme Court could effectively reverse our decision in *Cunningham* simply by setting aside as unreasonable any trial-court sentence that does not conform to pre-*Cunningham* California law.

2

The next objection minimizes the extent to which excessiveness review makes judge-found facts legally essential to punishment. If appellate courts will uphold, based only on the facts found by the jury, a district court's decision to impose all but the lengthiest sentences, then the number of sentences that are legally dependent on judge-found facts will be quite small. Thus, the argument goes, there is no reason to prohibit substantive reasonableness review altogether: Absent a claim that such review creates a constitutional problem in a given case, why prohibit it? I have already explained why this line of defense is inconsistent with established principles of statutory interpretation. See *supra,* at 7-9. But even on its own terms, the defense is inconsistent with *Booker* because reasonableness review is an improper and inadequate remedial scheme unless it ensures that judge-found facts are *never* legally necessary to justify the sentence imposed under the advisory Guidelines.

The mandatory Guidelines system that was invalidated in *Booker* had the same attribute of producing unconstitutional results in only a small proportion of cases. Because of guilty pleas and Guidelines ranges that did not depend on judge-found facts, the overwhelming majority of sentences imposed under the pre-*Booker* federal

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----, 2007 WL 1772146 (U.S.)
**(Cite as: --- S.Ct. ----)**

system were perfectly in accord with the Sixth Amendment. See *Booker,* 543 U.S., at 248; *id.,* at 275-277 (Stevens, J., dissenting in part). *Booker* nevertheless excised key statutory provisions governing federal sentencing, *in order to eliminate constitutional violations entirely.* If our conjured-up system does not accomplish that goal, then by what right have we supplanted the congressionally enacted mandatory Guidelines?

**\*25** If it is true that some sentences under today's Court-prescribed system will still violate the Sixth Amendment, nonetheless allowing the system to go forward will produce chaos. Most cases do not resemble my stylized hypotheticals, and ordinarily defendants and judges will be unable to figure out, based on a comparison of the facts in their case with the facts of all of the previously decided appellate cases, whether the sentence imposed would have been upheld as reasonable based only on the facts supporting the jury verdict or guilty plea. That will not stop defendants from making the argument, however, and the Court certainly has not foreclosed them from trying. See *supra,* at 8-9, and n. 4. Judges will have in theory two options: create complicated charts and databases, based on appellate precedents, to ascertain what facts are legally essential to justify what sentences; or turn a deaf ear to these claims, though knowing full well that some of them are justified. I bet on the latter.[FN5] Things were better under the mandatory Guidelines system, where every judge could readily identify when the Sixth Amendment was being violated, and could rule accordingly.

> FN5. Perhaps I am too cynical. At least one conscientious District Judge has decided to shoulder the burden of ascertaining what the maximum reasonable sentence is in each case based only on the verdict and appellate precedent, correctly concluding that this is the *only* way to eliminate Sixth Amendment problems after *Cunningham* if *Booker* mandates substantive reasonableness review. See *United States v. Griffin,* No. 05-10175-WGY, 2007 WL 1620526, *13-*14 (D.Mass., June 6, 2007) (Young,

D.J.) (Sentencing Memorandum).

3

Proponents of substantive reasonableness review could next argue that actual sentencing involves the consideration of dozens of different facts in order to make an individualized determination about each defendant. In the real world, they would contend, it is difficult, if not impossible, to determine whether any given fact was legally essential to the punishment imposed. But identifying the particular fatal fact is not necessary to identifying a constitutional violation. In the second hypothetical given above, for example, it is not possible to say which single fact, or which combination of facts, sufficed to bring the sentence within the bounds of the "reasonable." But it *is* possible to say (indeed, it *must* be said) that *some* judge-found fact or combination of facts had that effect-and that suffices to establish a Sixth Amendment violation. "Whether the judge's authority to impose an enhanced sentence depends on finding a specified fact ..., one of several specified facts ..., or *any* aggravating fact ..., it remains the case that the jury's verdict alone does not authorize the sentence. The judge acquires that authority only upon finding some additional fact." *Blakely, supra,* at 305.

4

**\*26** The last conceivable defense of the Guidelines-light would be to wrap them in the mantle of history and tradition. "[W]hen a practice not expressly prohibited by the text of the Bill of Rights bears the endorsement of a long tradition of open, widespread, and unchallenged use that dates back to the beginning of the Republic, we have no proper basis for striking it down. Such a venerable and accepted tradition is not to be laid on the examining table and scrutinized for its conformity to some abstract principle of [constitutional] adjudication devised by this Court. To the contrary, such traditions are themselves the stuff out of which the Court's principles are to be formed." *Rutan v. Republican Party of Ill.,* 497 U.S. 62, 95-96, 110 S.Ct. 2729, 111 L.Ed.2d 52

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(1990) (SCALIA, J., dissenting) (footnote omitted).

This consideration has no application here. In the federal system, prior to the SRA, substantive appellate review of a district court's sentencing discretion essentially did not exist. See, *e.g., Dorszynski v. United States,* 418 U.S. 424, 431, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974) (noting "the general proposition that once it is determined that a sentence is within the limitations set forth in the statute under which it is imposed, appellate review is at an end"); *id.,* at 443 ("[W]ell-established doctrine bars review of the exercise of sentencing discretion"). As for state appellate review of sentences, as late as 1962, at least 39 States did not permit appellate courts to modify sentences imposed within the statutory limits. See Appellate Review of Sentences, A Symposium at the Judicial Conference of the United States Court of Appeals for the Second Circuit, 32 F.R.D. 249, 260 (1962). It would be an exaggeration to say that history reflects an established understanding that appellate review of excessive sentences conflicts with the Sixth Amendment. But it would also be an exaggeration to say that the historical pedigree of substantive appellate review of sentencing is so strong and clear as to overcome the basic principle underlying the jury-trial right applied by this Court in *Apprendi, Blakely, Booker,* and *Cunningham.*

### C

A final defense of substantive reasonableness review would be to invoke the intent of Congress or of the *Booker* remedial opinion. As for congressional intent: *Of course* Congress intended that judge-found facts be legally essential to the punishment imposed; that was the whole reason the mandatory Guidelines violated the Sixth Amendment. If we are now to indulge a newfound respect for unconstitutional congressional intent, we should reimpose the mandatory Guidelines system. The quasi-Guidelines system the Court creates today manages to contravene *both* congressional intent *and* the Sixth Amendment.

As for the "intent" of the Booker remedial opinion: That opinion purported to be divining congressional

intent *in light of what the Sixth Amendment compelled.* See 543 U.S., at 263-265. Absent some explanation of why substantive reasonableness review does not cause judge-found facts to justify greater punishment than the jury's verdict or the defendant's guilty plea would sustain, I fail to understand how such review could possibly have been intended by all five Justices who composed the *Booker* remedial majority. After all, at least one of them did not intend "to override *Blakely,* and to render academic the entire first part of *Booker* itself, " and has confirmed that "[t]here would have been no majority in *Booker* for the revision of *Blakely* essayed in [Justice ALITO's *Cunningham* ] dissent." *Cunningham,* 549 U.S., at ----, n. 15 (slip op., at 20, n. 15) (opinion for the Court by GINSBURG, J.).

### II

**\*27** Abandoning substantive reasonableness review does not require a return to the pre-SRA regime that the *Booker* remedial opinion sought to avoid. See 543 U.S., at 263-265. As I said at the outset, I believe it is possible to give some effect to the *Booker* remedial opinion and the purposes that it sought to serve while still avoiding the constitutional defect identified in the *Booker* merits opinion. Specifically, I would limit reasonableness review to the sentencing *procedures* mandated by statute.

### A

A central feature of the *Booker* remedial opinion was its conclusion that the SRA was not completely inseverable. See *id.,* at 258-265. As a result, the Sentencing Commission "remains in place, writing Guidelines, collecting information about actual district court sentencing decisions, undertaking research, and revising the Guidelines accordingly." *Id.,* at 264. Likewise, sentencing courts remain obligated to consider the various factors delineated in 18 U.S.C. § 3553(a) (2000 ed., Supp. IV), including the now-advisory Guidelines range. 543 U.S., at 259-260. And they are still instructed by that subsection to "impose a sentence sufficient, but

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----

--- S.Ct. ----, 2007 WL 1772146 (U.S.)
**(Cite as: --- S.Ct. ----)**

not greater than necessary, to comply with the purposes set forth in paragraph (2) of [that] subsection." Significantly, § 3553(c) (2000 ed. and Supp. IV) continues to require that district courts give reasons for their sentencing decisions, a requirement the requisite detail of which depends on whether the sentence is: (1) within the advisory Guidelines range; (2) within an advisory Guidelines range that spans more than 24 months; or (3) outside the advisory Guidelines range. These explanations, in turn, help the Commission revise the advisory Guidelines to reflect actual sentencing practices consistent with the statutory goals. See *Booker, supra,* at 264 (citing 28 U.S.C. § 994 (2000 ed. and Supp. IV)).

*Booker* 's retention of these statutory procedural provisions furthered the congressional purpose of "iron[ing] out sentencing differences," 543 U.S., at 263, and "avoid[ing] excessive sentencing disparities," *id.,* at 264. It is important that appellate courts police their observance. *Booker* excised the provision of the SRA containing the standards for appellate review, see *id.,* at 260 (invalidating 18 U.S.C. § 3742(e) (2000 ed. and Supp. IV)), but the remedial majority's creation of reasonableness review gave appellate courts the necessary means to reverse a district court that: appears not to have considered § 3553(a); considers impermissible factors; selects a sentence based on clearly erroneous facts; or does not comply with § 3553(c) 's requirement for a statement of reasons.[FN6] In addition to its direct effect on sentencing uniformity, this procedural review will indirectly produce, over time, reduction of sentencing disparities. By ensuring that district courts give reasons for their sentences, and more specific reasons when they decline to follow the advisory Guidelines range, see § 3553(c)(2) (2000 ed., Supp. IV), appellate courts will enable the Sentencing Commission to perform its function of revising the Guidelines to reflect the desirable sentencing practices of the district courts. See *Booker, supra,* at 264 (citing 28 U.S.C. § 994 (2000 ed. and Supp. IV)). And as that occurs, district courts will have less reason to depart from the Commission's recommendations, leading to more sentencing uniformity.[FN7]

FN6. "Substance" and "procedure" are admittedly chameleon-like terms. See *Sun Oil Co. v. Wortman,* 486 U.S. 717, 726-727, 108 S.Ct. 2117, 100 L.Ed.2d 743 (1988). As the text indicates, my use of the term "procedure" here includes the limiting of sentencing factors to permissible ones-as opposed to using permissible factors but reaching a result that is "substantively" wrong. I therefore disagree with Justice Stevens that a district court which discriminates against Yankees fans is acting in a procedurally "impeccable " way. *Ante,* at 6 (concurring opinion).

FN7. Courts must resist, however, the temptation to make procedural review more stringent because substantive review is off the table. The judicial role when conducting severability analysis is limited to determining whether the balance of a statute that contains an unconstitutional provision is capable "of functioning independently." *Alaska Airlines, Inc. v. Brock,* 480 U.S. 678, 684, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987). Courts have no power to add provisions that might be desirable now that certain provisions have been excised. Thus, when engaging in reasonableness review to determine whether the district court has complied with the various procedures in § 3553, an appellate court cannot subject the district court to any greater requirements than existed pre-*Booker.*

**\*28** One possible objection to procedural review that the *Booker* remedial opinion appears not to have considered is 18 U.S.C. § 3742(f) (2000 ed., Supp. IV), which limits appellate courts to reversing sentences that are imposed "in violation of law" or "as a result of an incorrect application of the sentencing guidelines," § 3742(f)(1), or that fall in certain categories and are either "too high" or "too low," § 3742(f)(2).[FN8] But, as I noted in *Booker,* § 3742(e) and § 3742(f) are inextricably intertwined: Having excised § 3742(e)'s provisions setting forth the standards for appellate review, it is nonsensical to continue to apply § 3742(f)'s provisions

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----

--- S.Ct. ----, 2007 WL 1772146 (U.S.)
**(Cite as: --- S.Ct. ----)**

Page 26

governing the "Decision and Disposition" of appeals, which clearly track those now-excised standards. See 543 U.S., at 306-307 (SCALIA, J., dissenting in part). I would hold that § 3742(f) is " incapable of functioning independently" of the provisions excised in *Booker,* and is thus inseverable from them. See *Alaska Airlines, Inc. v. Brock,* 480 U.S. 678, 684, 107 S.Ct. 1476, 94 L.Ed.2d 661 (1987); 2 N. Singer, Sutherland Statutes and Statutory Construction § 44:4, p. 576 (6th ed. 2001) ("Even where part of an act is independent and valid, other parts which are not themselves substantively invalid but which have no separate function to perform independent of the invalid portions of the act are also held invalid").

> FN8. I say "possible" because one could claim that the failure to comply with 18 U.S.C. § 3553's procedural requirements results in a sentence imposed in violation of law, and thereby covered by § 3742(f)(1). But § 3742(f)(1)'s applicability to such procedural errors is called into question by § 3742(f)(2), which specifically addresses sentences where "the district court failed to provide the required statement of reasons [mandated by § 3553(c)(2) ]." For the reasons specified in the text, however, I see no need to grapple, post-*Booker,* with the proper interpretation of § 3742(f).

### B

**\*29** Applying procedural review in this case does not require much further discussion on my part. I join Part III of the Court's opinion. See *ante,* at 16-20.

\* \* \*

The Court's decision today leaves unexplained why the mandatory Guidelines were unconstitutional, but the Court-created substantive-review system that contains the same potential for Sixth Amendment violation is not. It is irresponsible to leave this patent inconsistency hanging in the air, threatening in the future yet another major revision of

Guidelines practices to which the district courts and courts of appeals will have to adjust. Procedural review would lay the matter to rest, comporting with both parts of the *Booker* opinion and achieving the maximum degree of sentencing uniformity on the basis of judge-found facts that the Constitution permits.

Justice SOUTER, dissenting.
Applying the Sixth Amendment to current sentencing law has gotten complicated, and someone coming cold to this case might wonder how we reached this point. A very general overview of the course of decisions over the past eight years may help to put today's holding in perspective.

Members of a criminal jury are guaranteed to be impartial residents of the State and district of the crime, but the Sixth Amendment right to trial by jury otherwise relies on history for details, and the practical instincts of judges and legislators for implementation in the courts. Litigation has, for example, worked through issues of size, see *Ballew v. Georgia,* 435 U.S. 223, 98 S.Ct. 1029, 55 L.Ed.2d 234 (1978) (prohibiting five-person state juries but allowing juries of six), and unanimity, see *Apodaca v. Oregon,* 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972) (allowing nonunanimous juries in state criminal trials); *Burch v. Louisiana,* 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d 96 (1979) (prohibiting nonunanimous six-person juries). Such decisions go to what William James would have called the "cash-value" of the Constitution's guarantee. See W. James, Pragmatism: A New Name for Some Old Ways of Thinking 200 (1st ed.1907).

One additional issue of both detail and implementation is the line between judge and jury in determining facts, and in particular the legitimate extent of factfinding by a judge when sentencing a defendant after a guilty plea or a jury's verdict of guilty. Since the very inception of judicial discretion in determining a sentence, judges have acted on what they learn in the course of a trial (and later what they gather from a presentence report or other evidence at time of sentencing), including details a trial jury may not have found to be true when it returned the guilty verdict or answered a

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

special question. But historically, also, the customary judicial use of these extraverdict facts has been in deciding on a sentence within a range set in advance by the statute defining the crime in question. See *Williams v. New York,* 337 U.S. 241, 246-247, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949). Thus, traditionally when a judge imposed a sentence at some point in the range, say, of 0-to-5 years specified by statute for some offense, every fact necessary to go as high as five years had been found by the jury (or admitted), even though the jury had not made particular or implicit findings of the facts the judge might consider in exercising discretion to set the sentence higher or lower within the 5-year range.

It was against this background, in *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), that we called attention to a serious threat to the practical value of a criminal defendant's jury right. Jones had been prosecuted under a statute that exemplified a growing practice of providing a definition and penalty for some basic crime subject to the right of jury trial, but then identifying variants carrying higher ranges of penalties depending on facts that arguably might be found by a judge sitting alone. Thus, Jones was convicted solely of carjacking, but if the further fact of causing " 'serious bodily injury' " was shown, the maximum penalty jumped from 15 years to 25. *Id.,* at 230 (quoting 18 U.S.C. § 2119 (1988 ed., Supp. V)). The Government's position was that the extra fact of serious bodily injury raising the penalty range required no jury finding because it was only a condition for imposing an enhanced sentence, up to a judge, not an element of a more serious crime, subject to the right to a jury's determination. See *Jones,* 526 U.S., at 233.

**\*30** It was an unsettling argument, because in prosecutions under these statutory schemes the most serious issue in the case might well be not guilt or innocence of the basic offense, but liability to the substantially enhanced penalty. If, for example, the judge found that Jones had caused not just serious bodily injury, but death, such extraverdict factfinding could have made the difference between 15 years and life imprisonment. *Id.,* at 230 (quoting § 2119 (1988 ed., Supp. V)). In a case like that,

giving judges the exclusive power to find the facts necessary to sentence in the higher range would make the jury a mere gatekeeper to the more important trial before a judge alone. *Id.,* at 243-244. The Sixth Amendment does not, of course, speak expressly to such a scheme, but that is not a sufficient reason to give it constitutional approval. For if judicial factfinding necessary for an enhanced sentencing range were held to be adequate in the face of a defendant's objection, a defendant's right to have a jury standing between himself and the power of the government to curtail his liberty would take on a previously unsuspected modesty.

*Jones* accordingly treated this practice as suspect enough to call for applying the doctrine of constitutional avoidance when the Court interpreted the statute in question. What the Government called a mere condition for imposing a sentencing enhancement was treated as an element of a more serious offense and made subject to a jury's factfinding. This interpretation obviated the constitutional decision whether subjecting an unwilling defendant to a more onerous range of sentence on facts found solely by a judge would violate the Sixth Amendment.

The issue did not go away with *Jones,* and the constitutional challenge was soon presented inescapably, in *Apprendi v. New Jersey,* 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). We held that exposing a defendant to an increased penalty beyond the range for a basic crime, based on facts determined exclusively by a judge, violated the Sixth Amendment, in the absence of a jury waiver; a defendant could not be subjected to a penalty more serious than one authorized by the facts found by the jury or admitted by the defendant. *Id.,* at 490.[FN1] A judge could constitutionally determine facts for exercising discretion in sentencing up to that point, but a fact that raised the range of possible penalties functioned like an element of a more serious offense, even if a statute ostensibly tied that fact to the sentence alone. Hence, in the absence of waiver, a sentence in that weightier range could be imposed by a judge only if the enhancing fact was found beyond a reasonable doubt by the trial jury. *Ibid.* In placing disputed factfinding off judicial limits

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----, 2007 WL 1772146 (U.S.)
**(Cite as: --- S.Ct. ----)**

when, but only when, its effect would be to raise the range of possible sentences, we made a practical judgment that maintained the historical judicial role in finding facts relevant to sentencing within the range set by a jury's verdict, but we recognized that the jury right would be trivialized beyond recognition if that traditional practice could be extended to the point that a judge alone (over objection) could find a fact necessary to raise the upper limit of a sentencing range.

> FN1. We recognized a single exception to this rule, permitting reliance on the fact of a prior conviction without a jury determination that the defendant had previously been convicted. See *Apprendi,* 530 U.S., at 489-490; see also *Almendarez-Torres v. United States,* 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998).

**\*31** From the moment *Apprendi* drew that line, however, its holding carried apparent implications for the regime of Guidelines sentencing adopted in 1984, see Sentencing Reform Act of 1984, 98 Stat.1987, 18 U.S.C. § 3551 *et seq.* (2000 ed. and Supp. IV), 28 U.S.C. § 991 *et seq.* (2000 ed. and Supp. IV). The general object of Guidelines sentencing was the eminently laudable one of promoting substantial consistency in exercising judicial discretion to sentence within the range set by statute for a given crime. Thus, at the elementary level, the Guidelines law limits the sentence that a judge may impose even within the sentencing range provided by the statute creating a particular offense. In effect, it divides a basic sentencing range into subranges and assigns an offender to a subrange based on the particular facts of the case and the offender's criminal history. A judge may depart from the assigned subrange only if the case presents a circumstance "not adequately taken into consideration by the Sentencing Commission in formulating the guidelines." 18 U.S.C. § 3553(b)(1) (2000 ed., Supp. IV). It follows that a judge must find facts beyond those necessary for the jury's guilty verdict to sentence above (or below, for that matter) the subrange designated for an offender with a comparable criminal history whose case

presents no relevant facts beyond the formal elements of the crime itself. The result is a hybrid sentencing practice. One could describe it by emphasizing that the judge's factfinding could never increase the sentence beyond the range set by the law defining the crime, or one could stress that a principal motivation for Guidelines sentencing is eliminating some traditional judicial discretion by forbidding a judge to impose a high sentence except on the basis of some fact beyond those necessary for a guilty verdict (and thus subject to the right to a jury's determination).

In *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), considering a state sentencing system similar to the federal scheme, we decided that the latter way of looking at it made more sense, if *Apprendi* was going to mean something in preserving the historical significance of the jury. See 542 U.S., at 305-306. We held that the additional factfinding necessary for a judge to sentence within a high subrange was comparable to the finding of additional fact required for a judge to impose an enhanced sentence under the law considered in *Apprendi.* If *Blakely* had come out the other way, the significance of *Apprendi* itself would be in jeopardy: a legislature would be free to bypass *Apprendi* by providing an abnormally spacious sentencing range for any basic crime (theoretically exposing a defendant to the highest sentence just by the jury's guilty verdict), then leaving it to a judge to make supplementary findings not only appropriate but necessary for a sentence in a subrange at the high end. That would spell the end of *Apprendi* and diminish the real significance of jury protection that *Apprendi* had shored up.

**\*32** In *United States v. Booker,* 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), a majority of the Court applied *Blakely* 's reasoning and held that the Federal Guidelines, too, subjected defendants to unconstitutional sentences in upper subranges, absent a jury finding or waiver. So far, so good for the Sixth Amendment, but there was the further issue of remedy, and at that step consistency began to falter. If statutory Guidelines were to survive, there were two serious alternatives. One was already in place in courts with the foresight to apply *Apprendi* to the Guidelines: require any additional

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

facts necessary for a possible high subrange sentence to be charged and submitted to the jury. True, the Government would have to think ahead (and could not charge relevant facts that emerged unexpectedly at trial). But the mandatory character of the Guidelines would be preserved, the goal of consistency would continue to be served, and the practical value of the jury right would not face erosion.

The second remedial alternative was a declaration by the Court that the Guidelines were not mandatory but discretionary, so that finding extraverdict facts was not strictly necessary for sentencing in a high subrange under the Guidelines. On this alternative, a judge who found a subsidiary fact specified as a condition for a high subrange sentence might decide to impose a low sentence (independently of the Guidelines' own provisions for downward departure), and a judge who found no such fact might sentence within the high subrange for other reasons that seemed sufficient. If the Guidelines were not mandatory, the subsidiary fact merely provided one reasoned basis for a traditional exercise of discretion to sentence at the high end of the sentencing range provided by the statute defining the crime.

But that second alternative could not be so simple: it raised yet further issues, and the reconfigured majority of the Court that in fact adopted it, see 543 U.S., at 244, guaranteed that we would have the case now before us. If district judges treated the now-discretionary Guidelines simply as worthy of consideration but open to rejection in any given case, the *Booker* remedy would threaten a return to the old sentencing regime and would presumably produce the apparent disuniformity that convinced Congress to adopt Guidelines sentencing in the first place. But if sentencing judges attributed substantial gravitational pull to the now-discretionary Guidelines, if they treated the Guidelines result as persuasive or presumptively appropriate, the *Booker* remedy would in practical terms preserve the very feature of the Guidelines that threatened to trivialize the jury right. For a presumption of Guidelines reasonableness would tend to produce Guidelines sentences almost as regularly as mandatory Guidelines had done, with judges finding the facts

needed for a sentence in an upper subrange. This would open the door to undermining *Apprendi* itself, and this is what has happened today.

**\*33** Without a powerful reason to risk reversal on the sentence, a district judge faced with evidence supporting a high subrange Guidelines sentence will do the appropriate factfinding in disparagement of the jury right and will sentence within the high subrange. This prediction is weakened not a whit by the Court's description of within-Guidelines reasonableness as an "appellate" presumption, *ante,* at 11 (emphasis deleted). What works on appeal determines what works at trial, and if the Sentencing Commission's views are as weighty as the Court says they are, see *ante,* at 8-12, a trial judge will find it far easier to make the appropriate findings and sentence within the appropriate Guideline, than to go through the unorthodox factfinding necessary to justify a sentence outside the Guidelines range, see 18 U.S.C. § 3553(c)(2) (2000 ed., Supp. IV). The upshot is that today's decision moves the threat to the practical value of the Sixth Amendment jury right closer to what it was when this Court flagged it in *Jones,* and it seems fair to ask just what has been accomplished in real terms by all the judicial labor imposed by *Apprendi* and its associated cases.

Taking the *Booker* remedy (of discretionary Guidelines) as a given, however, the way to avoid further risk to *Apprendi* and the jury right is to hold that a discretionary within-Guidelines sentence carries no presumption of reasonableness. Only if sentencing decisions are reviewed according to the same standard of reasonableness whether or not they fall within the Guidelines range will district courts be assured that the entire sentencing range set by statute is available to them. See *Booker, supra,* at 263 (calling for a reasonableness standard "across the board"). And only then will they stop replicating the unconstitutional system by imposing appeal-proof sentences within the Guidelines ranges determined by facts found by them alone.

I would therefore reject the presumption of reasonableness adopted in this case, not because it is pernicious in and of itself, but because I do not think we can recognize such a presumption and still

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.

--- S.Ct. ----

Page 30

--- S.Ct. ----, 2007 WL 1772146 (U.S.)
**(Cite as: --- S.Ct. ----)**

retain the full effect of *Apprendi* in aid of the Sixth Amendment guarantee. But I would not stop at rejecting the presumption. Neither my preferred course nor the choice of today's majority can avoid being at odds to some degree with the intent of Congress; there is no question that Congress meant to impose mandatory Guidelines as the means of bringing greater uniformity to sentencing. So I point out that the congressional objective can still be attained, but that *Booker* 's remedial holding means that only Congress can restore the scheme to what it had in mind, and in a way that gives full measure to the right to a jury trial. If Congress has not had a change of heart about the value of a Guidelines system, it can reenact the Guidelines law to give it the same binding force it originally had, but with provision for jury, not judicial, determination of any fact necessary for a sentence within an upper Guidelines subrange. At this point, only Congress can make good on both its enacted policy of mandatory Guidelines sentencing and the guarantee of a robust right of jury trial.

**\*34** I respectfully dissent.[FN2]

> FN2. Because I would ask the Court of Appeals to review the sentence for reasonableness without resort to any presumption, I would not reach the other issues in this case.

U.S.,2007.
Rita v. U.S.
--- S.Ct. ----, 2007 WL 1772146 (U.S.)

END OF DOCUMENT

© 2007 Thomson/West. No Claim to Orig. U.S. Govt. Works.