**K&L|GATES**

Kirkpatrick & Lockhart Preston Gates Ellis LLP
1601 K Street NW
Washington, DC 20006-1600

T 202.778.9000    www.klgates.com

*Let this be filed.*
*ESH 6/22/07*

June 22, 2007

**FILED**
JUN 2 2 2007
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**HAND-DELIVERED**

The Honorable Ellen Segal Huvelle
United States District Court for the District of Columbia
333 Constitution Avenue
Washington, DC 20001

   Re:   *United States v. J. Steven Griles*, Criminal No. 07-CR-079

Dear Judge Huvelle:

   Enclosed please find a letter delivered to us today, that we are submitting in connection with the upcoming sentencing of James Steven Griles. This letter is written to address certain allegations made in a letter filed with the Court on June 21, 2007 and found at docket entry number 18. We have redacted the address and phone number of the author, a former DOJ trial attorney, but will make it available to the Court upon request. If the Court so directs, we will have this submission filed in the docket as well.

   Please let us know if you have any questions.

                              Respectfully Submitted,

                              KIRKPATRICK & LOCKHART
                              PRESTON GATES ELLIS LLP

                        By:   *Barry M Hartman*
                              Barry M. Hartman, Esq.
                              Brian W. Stolarz

                              Counsel for James Steven Griles
                              1601 K Street, NW
                              Washington, DC 20006

BMH:cg
Enclosure

cc:   Armando Bonilla and Kartik Raman, Department of Justice

June 21, 2007

The Honorable Ellen Segal Huvelle
United States District Court for the District of Columbia
c/o Barry M. Hartman & Brian W. Stolarz
K&L Gates
1601 K Street, NW
Washington, DC 20006

  Re: J. Steven Griles

Dear Judge Huvelle:

  My name is Sandra Spooner; I am a recently-retired career United States Justice Department attorney. I am writing to you in support of J. Steven Griles, who is to be sentenced before you on June 26, 2007. Specifically, I am writing in the hope the information I am submitting to you in this letter will support leniency in his sentencing.

  I was hired to be a trial attorney in the Civil Division of the Justice Department through the Attorney General's Honors Program in 1977. I retired last September after 30 years of service. For more than half of my tenure I was a member of the Senior Executive Service and Deputy Director of the Commercial Litigation Branch. I was twice awarded the Presidential Rank Award. I litigated, and supervised attorneys who litigated, many important cases in Federal Courts throughout the country.

  I met Steve Griles in November 2001, after I was assigned to be lead counsel in an extremely contentious, difficult class action filed in Federal District Court by Native Americans seeking an accounting of their trust accounts managed by the Department of the Interior. Justice Department attorneys in the Environment and Natural Resources Division had been handling the case since it was filed in 1996, but had become the subject of harsh and, in the Government's view, extremely unwarranted, attacks from the judge assigned to the case. The case is extremely complicated and opposing counsel is not above using highly questionable tactics to discredit not only Interior personnel, but also government counsel. Therefore, we in the Civil Division staffed the case with 15 lawyers and a highly professional litigation support contractor. It was my

1

understanding that I was assigned to lead the effort because of my extensive trial experience, experience with highly contentious, high-profile cases, and reputation for integrity with the bench and bar.

At the time I took over the case (*Cobell, et al v. Department of the Interior*), the career employees at the Department of the Interior worked, quite literally, in an atmosphere of fear as a result of court rulings and actions by plaintiffs' counsel. Both the previous trial team and the previous administration had found it extremely difficult to obtain information and assistance from government employees who feared that any contact with the case would result in damage to their careers. However, it became obvious to me that the new leadership at Interior was working hard to change this situation and were willing to make the difficult decisions necessary to assist the Justice Department in defending the action. By doing so, they led by example and were able to obtain the cooperation of career employees who had theretofore felt that assisting in the defense left them exposed to unwarranted attacks by the Court and opposing counsel.

Although the Secretary and I met on occasion, Steve Griles, as Deputy Secretary of the Interior, was the most senior Interior official with whom I dealt regularly during my five years as lead counsel for the Government. He and his immediate subordinate were indispensable to me and my colleagues in our efforts to work with career Interior officials to respond to discovery, obtain information required by the Court, and prepare the Government's defense. Without Steve's leadership, I seriously doubt that we would have been able to mount an effective defense to this case, in which plaintiffs sought a payment from the Federal Government of more than $100 billion. Steve's leadership was an act of courage because virtually every government employee – including Justice Department counsel – who participated in the defense of the case was subjected to unwarranted excoriation by plaintiffs' counsel, and often by the Court. Indeed, the judge was ultimately removed from the case by the Court of Appeals after it found – based in large part on evidence of his harsh treatment of government personnel – to have lost his objectivity. Indeed, previously it had been Steve's willingness to risk the trial judge's unwarranted and unfair censure – which did, indeed, follow – by providing sworn evidence of misconduct by the Court's "monitor" that resulted in the removal of the monitor, as well, by the Court of Appeals.

I did not know Steve before we were brought together to work on the *Cobell* litigation, and I have no lingering relationship with him. However, based on my experience in working with him on the case, I know him to have made serious personal sacrifices to ensure that the Government was able to make its best defense to unwarranted litigation and I know that he did so without expectation of any personal gain. It would have been easy for him to take the least risky path and main aloof from the litigation, but he chose to exercise leadership and take personal risks to ensure that Justice Department counsel had the cooperation and information necessary to advance the interests of the United States in court.

Indeed, it has come to my attention that the lead plaintiff in the *Cobell* litigation, Elouise Cobell, has complained of Steve's *Cobell*-related actions in a letter to this Court. I can assure you, Your Honor, that Ms. Cobell is incorrect when she contends that Mr. Griles provided false

2

information to the Court regarding the misconduct of the court monitor in the litigation. The fact that the monitor (and the trial judge himself) was removed from the case by the Court of Appeals speaks for itself.

Thank you for taking the time to read and consider my submission. I hope that, in sentencing Steve Griles, you will find his contributions, with substantial risk to himself, to the defense of the United States in the *Cobell* litigation to be a mitigating factor.

Sincerely,

3